IN THE MATTER OF ROBERT C. YACAVINO, AN ATTORNEY AT LAW.

Argued May 7, 1985—Decided July 16, 1985.

*Colette A. Coolbaugh,* Executive Counsel, argued the cause for complainant Disciplinary Review Board.

*Don X. Bancroft* argued the cause for respondent.

PER CURIAM.

This matter arises from a report of the Disciplinary Review Board (DRB) recommending a three-year suspension of respondent. The recommendation is based on its finding that respondent repeatedly misrepresented the status of pending adoption proceedings to his client, and prepared two false court orders to stall the client's discovery of his deficiencies. Based upon our independent review of the record, we are clearly convinced that respondent engaged in the described conduct and that it warrants the recommended suspension.

Respondent was admitted to the Bar in 1974 but did not enter private practice until 1980. After a brief period of practice on his own, he became associated, in February 1981, with a firm of twenty lawyers with an office in Newark and satellite offices in Caldwell and Pompton Plains. He was assigned to the office in Pompton Plains. The firm was taking over the practice of an attorney in that area who was entering retirement. In March 1981, respondent was given the responsibility of representing a client of that retiring attorney in adoption proceedings.

The proceedings were straightforward. The client, who had been represented in an earlier matrimonial action by the retiring attorney, sought to adopt the children of his second wife. It was expected to be uncontested. Her former husband was to consent to the adoption. Respondent told the client at the initial interview that it would not be a difficult task to put through the adoption of the two girls. (Respondent contends that only the husband was his client. Because of the identity of their interests we shall refer to husband and wife as clients.)

For reasons that we shall discuss later, respondent did essentially nothing to advance the client's case, despite repeated inquiries from the client and his wife. For almost a year the file was dormant. (Respondent did obtain the consent in writing of the natural father and did say that he prepared a draft complaint.) Then in April 1982, the firm closed the Pompton

Plains office. Respondent declined to work at its Newark or Caldwell offices.

When he left, he continued to handle ten cases of the firm. This adoption case was one of them. Respondent eventually opened his own office in Pompton Plains. He still failed to advance the case and began to cover up his neglect. The District Ethics Committee's report details the misrepresentations. First, he told the clients that things were "in the works." In the summer of 1982, he told them that he had good news—the adoption had gone through. Later he told them that the judge had signed the adoption papers, and finally he told the wife that he would mail them copies of the final order.

In fact, he had done nothing. Although, as he put it, it was a tough gamble opening up on his own, he claims he was not under intense pressure and the practice was not out of hand. Still, having first deceived his client, he was drawn by the tangled net into the final act of deception. Faced with repeated requests for evidence that the matter had been favorably concluded, respondent drew up a fictitious order to deliver to his client's wife on Friday, October 29, 1982. He typed two orders for adoption (one for each child) and superimposed the signatures of a sitting judge of the vicinage on the orders. He gave the orders to his client's wife shortly after noon on Friday, the 29th of October.

Respondent testified to the District Ethics Committee that he had no plan to deceive the clients. He rationalized that nothing could be done with the orders. They had no docket numbers. He said he was stalling for time so that he could enlist another attorney to salvage the matter. The client's wife, suspecting that something was amiss, called the judge. Within hours, the scheme unraveled. The judge called the Passaic County Prosecutor into the matter. The respondent was called down to the prosecutor's office on that Friday afternoon and admitted the entire matter. On Monday, respondent obtained the counsel

that he should have sought months earlier. The adoption matter was turned over to another attorney.

The Passaic County Prosecutor decided not to seek an indictment. In the office's view, there was insufficient evidence of criminal intent to defraud that would warrant a conviction under *N.J.S.A.* 2C:21–1a. (forgery) or related Code provisions. The matter was then referred to the Division of Ethics and Professional Services. The facts are essentially admitted by respondent. At the hearing before the District Ethics Committee, he quibbled over the fact that he delivered the orders to his client's wife, not to the client himself. The District Ethics Committee and the DRB each perceived this to be totally irrelevant. The client's wife had been in repeated contact with respondent. Respondent himself admits that the husband and wife had collectively called him over thirty times on the case. There is no justification for this conduct.

Once again the distinction between criminal misconduct and unethical conduct is critical. *See In re Milita,* 99 *N.J.* 336, 342 (1985). If the respondent were shown to have engaged in criminal conduct involving forgery of an official document, the penalty would almost certainly be disbarment. *See In re Hughes,* 90 *N.J.* 32, 36 (1982). Even absent criminal intent, when an attorney perpetrates a fraud upon the court, that conduct poisons the streams of justice and can warrant disbarment. *In re Stein,* 1 *N.J.* 228, 237–38 (1949).

In respondent's favor are only the facts accepted by the DRB: that respondent's actions were not taken for the purpose of self-enrichment; that he promptly and fully cooperated with law enforcement and disciplinary authorities; and that the incident is one of isolated or aberrant behavior on his part. Nonetheless, the misconduct is grave. Respondent violated DR 1–102(A)(3) and (4) by engaging in illegal conduct adversely reflecting on his fitness to practice law and by engaging in conduct involving dishonesty and misrepresentation. In addition, the respondent's persistent failure to act was

grossly negligent, in violation of DR 6–101(A)(1). It is also beyond doubt that in this matter the respondent violated DR 7–101(A)(2) by failing to carry out the client's contract of employment. (In our disposition, we refer to the Disciplinary Rules that governed the conduct of attorneys at the time of these occurrences. Effective September 10, 1984, the Rules of Professional Conduct of the American Bar Association, as modified by the Court, govern that conduct. *R.* 1:14. Those Rules contain provisions equivalent to the Disciplinary Rules involved here.)

We have repeatedly emphasized that in disciplinary matters our goal is not punishment but protection of the public. *In re Infinito,* 94 *N.J.* 50, 57 (1983). "Our concern is that clients should not continue to suffer the consequences of being told their case was under control when it was not." *In re Goldstein,* 97 *N.J.* 545, 549 (1984). Hence we conclude that the misconduct warrants the sanction recommended. *See In re McNally,* 81 *N.J.* 304, 307 (1979) (two-year suspension when attorney falsified Sheriff's deed to placate client).

There remains, however, a disturbing aspect to this case that must be mentioned. Without mitigating respondent's fault, there is evidence of concern to all attorneys involved in the episode. According to his testimony, respondent was left virtually alone and unsupervised in the year that he serviced the firm's Pompton Plains office. The office was lacking in the essential tools of legal practice. Partners rarely attended the office; no member of the firm inquired as to the status of the office matters. We would not credit this version of the events without first hearing from the firm. In the future, however, this attitude of leaving new lawyers to "sink or swim" will not be tolerated. *In re Barry,* 90 *N.J.* 286, 293 (1982) (Clifford, J., dissenting). Had this young attorney received the collegial support and guidance expected of supervising attorneys, this incident might never have occurred. These clients were delayed well over a year-and-a-half in the handling of a matter that was of intense personal concern to them. "This sorry

episode points up the need for a systematic, organized routine for periodic review of a newly admitted attorney's files." *In re Barry, supra,* 90 *N.J.* at 293 (Clifford, J., dissenting).

Our Rules of Professional Conduct now make clear the ethical responsibility of a supervising attorney to take reasonable efforts to ensure "that all lawyers [in the organization] conform to the Rules of Professional Conduct." *RPC* 5.1(a). Under that Rule it is the supervising attorney's responsibility to assure that each lawyer in the organization diligently carries out the firm's contracts of employment with clients. *See id.*

In these circumstances, we conclude that the appropriate discipline is to suspend respondent for three years. In addition, after the period of suspension, respondent may be re-admitted to practice only under a form of proctorship. *See In re O'Gorman,* 99 *N.J.* 482 (1985). Respondent's inability to advance this routine adoption matter manifests a need for a period of supervision. His present attorney has confirmed that respondent's personal isolation from partners, associates or peers was a major contributing cause to his misconduct. The precise details of that proctorship are to be approved by the Office of Attorney Ethics. The arrangement will be for a period of one year from the date upon which it is implemented, and until further order of this Court dissolving the proctorship. The proctor is to submit to the Office of Attorney Ethics detailed reports on respondent's status, on a basis and in a form acceptable to that office. Further, respondent is to reimburse the Ethics Financial Committee for the administrative costs incurred on account of these proceedings.

So ordered.

*For suspension*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that disciplinary action be taken against ROBERT C. YACAVINO, who was admitted to the bar of this State in 1974, of POMPTON PLAINS, and good cause appearing;

It is ORDERED that ROBERT C. YACAVINO is suspended for a period of three years, effective August 1, 1985, and until further order of this Court; and it is further

ORDERED that ROBERT C. YACAVINO shall reimburse the Ethics Financial Committee for administrative costs incurred on account of these proceedings; and it is further

ORDERED that after the period of suspension, respondent shall be readmitted to practice only under a form of proctorship to be approved by the Office of Attorney Ethics. The arrangement will be for a period of one year from the date of implementation and until further order of the Court dissolving the proctorship. The proctor is to submit detailed reports on respondent's status to the Office of Attorney Ethics on a basis and in a form acceptable to that office, and it is further

ORDERED that respondent shall comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.