IN THE MATTER OF SEYMOUR GOLDSTAUB, AN
ATTORNEY AT LAW.

Argued April 20, 1982—Decided June 16, 1982.

*Colette A. Coolbaugh*, Secretary, argued the cause for complainant Disciplinary Review Board.

*Libero D. Marotta* argued the cause for respondent.

PER CURIAM.

Respondent, a member of the bar since 1960, has been the subject of some 30 ethical complaints during his professional career. From November 23, 1971 to November 14, 1972, he was suspended from the practice of law for failing to respond to a consolidated statement of charges filed by the Hudson County Ethics Committee. The thread running through respondent's ethical history is a failure to attend to his basic responsibilities to his clients, to the profession, and to this Court.

This disciplinary proceeding focuses upon respondent's admitted failure to pursue diligently the interests of his clients in three civil cases and one criminal appeal. Complaints by those clients to the District VI (Hudson County) and District II (Bergen County) Ethics Committees led to the return of separate presentments which, in turn, were consolidated before the Disciplinary Review Board. That Board concluded that each failure to act constituted gross negligence and, taken together, the four cases demonstrated a pattern of neglect in violation of *DR* 6–101(A)(1).

At its hearing, DRB made the following findings with respect to the Yuhasz complaint filed with the District VI Ethics Committee:

The respondent was retained by complainant Julius Yuhasz, Jr. to represent his uncle, Alfred Frankino, in an appeal of what was believed to be an excessive sentence to his guilty plea to a criminal offense. Mr. Frankino and his family

retained the respondent to file a motion for reconsideration of that sentence. Respondent processed such a motion and argued the matter in Hudson County before the Superior Court on July 29, 1977. The motion was denied. It was not disputed that respondent was paid in full for his services on the motion for reconsideration.

Following denial of respondent's motion, he conferred with the complainant and Mrs. Wood, his client's sister. Mr. Frankino's right to appeal the denial of the motion to the Appellate Division was discussed, and respondent agreed to handle such a motion for a $500 fee plus costs. Respondent then met with Mr. Yuhasz and Mr. Frankino at the County Jail and an appeal was again discussed. At hearing before the District VI Ethics Committee, three separate versions were presented of the discussion which took place concerning the payment of respondent's fee:

1. Respondent has no recollection of discussing payment with Frankino, and although he does not recall the source of the request, 'the family' requested that he not discuss payment of his fee with Frankino;

2. Both complainant Yuhasz and Mrs. Wood testified that respondent said the important thing was to get Frankino out of jail, and that the fee could be paid later;

3. The client, Mr. Frankino, recalled that the fee was discussed at the County Jail meeting, and respondent advised that the client could pay once he left jail and returned to work.

Notice of appeal was filed by respondent on August 1, 1977. Transcripts were ordered and, according to the certification of the Certified Shorthand Reporter, were prepared on August 3, 1977.

Respondent admitted at the ethics hearing that he neither filed a brief nor requested an extension of time to file a brief at any time.

On April 20, 1978, the Appellate Division moved to dismiss the complaint. Although it is the respondent's position that he thereafter telephoned Mrs. Wood advising her of the motion, returnable on May 15, 1978, and requesting payment of his fee, Mrs. Wood denied hearing from respondent after August of 1977. She noted that although she had received a bill for $500 from the respondent, no demand for payment was ever made.

The respondent, in his answer to the ethics complaint, stated that he did not pursue the appeal because he did not receive payment. The appeal was dismissed on May 15, 1978.

Mr. Frankino served 30 months in jail.

The District VI Ethics Committee concluded that respondent's failure to seek permission of the Court to withdraw from his representation of Frankino, his failure to process his client's appeal to conclusion without permission to withdraw and his failure to properly notify the complainant of his intention not to proceed constituted clear violations of DR 1–102(A)(5) and (6), DR 2–110(A) and (C), and DR 7–101(A). The Committee noted that respondent was ignorant of the appropriate procedure to follow in the Frankino appeal, and had been advised of the appropriate procedure by the Committee.

The DRB made the following further findings with respect to the complaints filed with the District II Ethics Committee:

### MC CABE COMPLAINT

The respondent was formally retained by Ronald McCabe on July 26, 1976 to pursue a medical malpractice action in connection with the death on November 18, 1974 of the client's mother, Sophie Hitchell. The respondent was given a $1,000 retainer and a retainer agreement was executed. In the autumn of 1976, and prior to the November 18, 1976 Statute of Limitations deadline, the respondent advised his client that a complaint had been filed on the case and the appropriate defendants had been named. The client and respondent specifically discussed the Statute of Limitations and the concomitant need for filing the complaint prior to November 18, 1976. Although the respondent then assured Mr. McCabe that the complaint had been filed, his statements were false, and known by respondent to be false at the time they were made. In fact, no complaint was ever filed by respondent in this case.

### CARNELLI COMPLAINT

Marge Carnelli retained the respondent to file suit to recover for personal injuries sustained by her in a 'slip and fall' accident.

The respondent, in his answer, admitted that he had failed to file a complaint within two years of the accident. Mrs. Carnelli's claim is now barred by the Statute of Limitations.

### FRANKEL COMPLAINT

The respondent was retained by Wendy L. (Herman) Frankel to represent her in connection with injuries sustained by her in an automobile accident. A complaint was filed and served by the respondent with the Superior Court, Law Division, Hudson County. An answer was thereafter filed and served by the defendant.

Although respondent was notified that the Frankel case was to be placed on the 'weekly call' on February 2, 1979, he did not appear in court on that date. An Order was therefore filed on February 2, 1979 dismissing the complaint for lack of prosecution, but permitting restoration of the case '. . . within thirty (30) days of this date upon application and the payment of costs.' Despite the fact that this Order was received by the respondent within several days of issuance, the respondent neither advised his client of the Order nor moved to vacate the Order or restore the case to active status. The respondent admitted, and the District II Ethics Committee concluded, that the interests of Mrs. Frankel were prejudiced by respondent's inaction.

DRB then reached the following conclusion and recommendation:

Upon a review of the full record, and following oral argument, the Board is satisfied that the conclusions of the Committee are fully supported by clear and convincing evidence. The respondent's failure to act in the four separate cases considered by the two District Ethics Committees clearly establishes a pattern of negligence in violation of DR 6–101(A)(2). It is not necessary to expand the scope of review beyond the four pending cases to arrive at this conclusion.

In addition, in both *McCabe* and *Carnelli*, the respondent's failure to file suit prior to the running of the Statute of Limitations has forever barred these clients from pursuing their claims. In both *Yuhasz* and *Frankel*, even after respondent's inaction caused dismissal of the pending court cases, he failed either

to advise his clients of the status or to attempt to reinstate the matters. The facts presented thus further establish that respondent's conduct clearly rises to the level of gross negligence in violation of *DR* 6–101(A)(1) individually, as well as in the aggregate. Moreover, the respondent has also violated *DR* 1–102(A)(4) in failing to properly represent the status of their cases to his clients. While the respondent's alleged efforts to rectify the situation in the *McCabe* matter are commendable, they do not alter the nature of his unethical conduct. Such conduct cannot be condoned by this Board. Disciplinary action is required.

The Board therefore recommends that the respondent be suspended from the practice of law for a period of 6 months. The Board is further concerned that the pattern of negligence presented by the complaints before it is indicative of possible psychiatric dysfunction, and therefore recommends that, prior to readmission to the practice of law, he be required to present medical evidence of his capability of returning to the practice of law. The Board further recommends that the respondent be required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

Our independent review of the facts leads us to conclude that the factual findings of the DRB are correct, and we adopt them.

In general, our role in disciplinary matters is to protect the public interest and ensure that public confidence in the legal profession is not diminished. The purpose of discipline is not to punish the offender, but to protect the public from the attorney who does not meet the standards of responsibility required of every member of the profession. *In re Stout*, 75 *N.J.* 321, 325 (1978).

Apparently because of respondent's genuine remorse, the Disciplinary Review Board recommended that respondent be suspended from the practice of law for six months and that he be required to furnish medical evidence of his fitness to return to practice prior to readmission to the bar. Notwithstanding respondent's sincere efforts to rectify his errors with some of his clients, we cannot agree that a six-month suspension is sufficient to safeguard the public interest. Upon consideration of the relevant facts, including respondent's prior disciplinary history, we suspend respondent for a period of one year, with readmission subject to the recommended medical proof of capability to practice.

The respondent is required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

*For suspension*—Chief Justice WILENTZ and Justices CLIF-
FORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*Opposed*—None.

### ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that disciplinary action be taken against SEYMOUR GOLDSTAUB of Guttenberg; and good cause appearing

It is ORDERED that SEYMOUR GOLDSTAUB be suspended for a period of one year and until he can produce satisfactory medical proof of his fitness to practice law, effective June 30, 1982, and until the further order of this Court; and it is further

ORDERED that no application for restoration to the practice of law will be favorably considered until respondent has reimbursed the Administrative Office of the Courts for the appropriate administrative costs, including production of transcripts, arising out of these proceedings; and it is further

ORDERED that, pending such reimbursement and restoration, respondent is restrained and enjoined from practicing law during the period of his suspension and is further directed to comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.