IN THE MATTER OF FRANKLIN A. GOLDSTEIN,
AN ATTORNEY AT LAW.

Argued November 28, 1983—Decided November 9, 1984.

*Colette A. Coolbaugh,* Counsel, argued the cause for complainant Disciplinary Review Board.

*William J. O'Hagan, Jr.* argued the cause for respondent (*Stout, O'Hagan & O'Hagan,* attorneys).

PER CURIAM.

This matter arises from a report of the Disciplinary Review Board (DRB) recommending disbarment for multiple instances

of misconduct over a period of years, aggravated by respondent's failure to comply with his December 1978 agreement to limit his practice to criminal matters and to comply with an October 31, 1979 order of temporary suspension.

The eleven instances of misconduct are similar in nature. In each, defendant essentially failed to carry out contracts of employment with his clients, failed to act competently with respect to the matters entrusted to him, and misrepresented the status of the actions being handled on the clients' behalf.

The DRB has made detailed findings with respect to the several incidents that may be summarized as follows: clients Morrell, Zalinski, DeDonna, Hedges, Patrick and Mary Nelson were each told that their personal injury or property damage claims were either filed, being advanced, or settled. In fact, for the most part, respondent did absolutely nothing on their files.

John Nelson's criminal appeal was never prosecuted, although he was told that it would be. Respondent also failed to follow through on a motion to recover Joseph Nelson's property seized by authorities. Eileen Walsh's criminal case remained pending, although she was told that it had been dismissed.

Wilson and Harman were dissatisfied matrimonial litigants. Respondent failed to file a counterclaim for Wilson and failed to follow through on pending support matters, causing Wilson to be arrested for nonpayment of support before the matter was resolved. Respondent erroneously told Harman that an order restraining him from extended off-premises visitation was invalid, subjecting Harman to contempt-of-court proceedings.

Of gravest concern to the Board, however, was the fact that respondent undertook the Harman representation in the summer of 1979 in violation of his specific agreement with the Board and the Monmouth County District Committee that he would limit his practice to criminal matters. In his 1978 appearances before the District Committee, his witnesses had described respondent as an able criminal-law practitioner, but found that he was practicing without a regular office, clerical

staff, or supervisory attorneys. Respondent agreed to limit his practice. Following notice of the Harman matter, the respondent was temporarily suspended from the practice of law. Yet he persisted into 1980 in advising Patrick that he was settling his case and Mary Nelson that he was working on her case. The Board found this conduct inexcusable. It concluded:

> Although the Board is sympathetic to respondent's background and personal problems, it considers the protection of the public to be of paramount importance here. Since a significant amount of misconduct occurred when respondent was allegedly free of the psychiatric disability, the Board cannot consider the psychiatric defense in mitigation of this conduct.

Respondent has essentially conceded the essence of the eleven instances of misconduct. He has maintained that he sought no advantage from his misrepresentations. In the case of Eileen Walsh, he states that he sincerely believed that she would be admitted to the pretrial intervention program; in the case of Harman, that he simply was trying to help out a friend of a friend caught in a tight situation with respect to summer visitation. The psychiatric defense offered by respondent did not seek to demonstrate "that respondent suffered a loss of competency, comprehension or will of a magnitude that could excuse egregious misconduct that was clearly knowing, volitional and purposeful." *In re Jacob*, 95 *N.J.* 132, 137 (1984). In his July 1979 testimony, respondent's psychiatrist described him as competent to practice law, although suffering from depression induced by a deeply disturbing divorce, the tragic death of that first wife by foul play, the breakup of a new relationship with another woman, and problems with the children of his marriage. In a subsequent report, the physician emphasized that he never intended to represent Mr. Goldstein as completely recovered from the ravages of the turmoil he had suffered. Without resolving the conflict in the reports, we accept, for purposes of our disposition, that respondent was not completely recovered when the continued instances of misconduct occurred.

Nevertheless, in such disciplinary matters, we must concern ourselves primarily not with the motivation of the attor-

ney, but with the consequences to the public. *In re Jacob, supra*, 95 *N.J.* 132. We have repeatedly emphasized that in disciplinary matters our goal is not punishment but protection of the public. *In re Infinito*, 94 *N.J.* 50, 57 (1983).

Our independent review of the full record leads us to agree that the Board's findings of unethical conduct on the part of the respondent are fully supported by clear and convincing evidence. In the eleven individual matters reviewed, the respondent misrepresented the status of the cases to his clients in violation of *DR* 1–102(A)(4). His conduct in all of these cases clearly reflected adversely on his ability to practice law. *DR* 1–102(A)(6). The respondent's persistent failure to act was not only grossly negligent, in violation of *DR* 6–101(A)(1), but further resulted in a clear pattern of negligence. *DR* 6–101(A)(2). It is also beyond doubt that in each of the matters the respondent violated *DR* 7–101(A)(2) by failing to carry out a contract of employment. These improprieties standing alone are extremely serious and would require at the least suspension for a lengthy term. But the pattern is disturbing. The incidents demonstrate an unwillingness or inability to cope with the manifest requirements of a competent practice. We have excused such neglect in the case of young or inexperienced practitioners. *See In re Stern*, 92 *N.J.* 611 (1983); *In re Barry*, 90 *N.J.* 286 (1982). But respondent was neither young nor inexperienced. His deficiencies were chronic and persistent, not clearly attributable to identifiable events that overwhelmed his will or comprehension. As noted by the DRB, even after this Court suspended respondent, he continued to advise clients that he was working on their cases. His doctor described him as one who could not " 'say no,' leading to his overextending himself." In this overextension, though, there is a pattern of neglect. We believe it is more realistic to observe that "[t]aken together, respondent's conduct reflects a lack of awareness of the degree of professionalism expected of every member of the bar." *In re Katz*, 90 *N.J.* 272, 284 (1982).

Respondent's counsel has ably and forcefully argued his case and we are entreated to consider the trusted positions held by respondent at the bar and in his community. We respect their regard for his desire to help others. Yet lawyers must render that service with professionalism. Our concern is that clients should not continue to suffer the consequences of being told their case was under control when it was not. Upon consideration of all the circumstances, we are constrained to conclude that respondent must be disbarred.

We further direct the respondent to reimburse the Office of Attorney Ethics for appropriate administrative costs, including production of transcripts.

*For disbarment*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.

## ORDER

It is ORDERED that FRANKLIN A. GOLDSTEIN of ASBURY PARK be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that FRANKLIN A. GOLDSTEIN be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that FRANKLIN A. GOLDSTEIN reimburse the Office of Attorney Ethics for costs, including the production of transcripts; and it is further

ORDERED that FRANKLIN A. GOLDSTEIN comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.