IN THE MATTER OF JEROME JAY COHEN, AN
ATTORNEY AT LAW.

January 30, 1989.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that JEROME JAY COHEN of CHERRY HILL, who was admitted to the Bar of this State in 1965, be suspended from the practice of law for a period of one year for conduct involving numerous ethical violations, among them: 1) his submission of a statement of services that was so recklessly prepared as to amount to a knowing misappropriation, 2) gross negligence in preparing for signature an affidavit containing an untrue statement, 3) his representation of one grievant's ex-husband in an action in which JEROME JAY COHEN sought treble damages against his former client, and 4) his payment of a transcript deposit with a trust account check, the foregoing conduct in violation of DR 1-102(A)(1), (3), (4), (5) and (6); DR 2-106(A) and (D); DR 2-107(A)(3); DR 7-102(A)(6) and (7); DR 5-105(C) and DR 9-102(A), and this Court having issued an order to show cause why JEROME JAY COHEN should not be disbarred or otherwise disciplined, and the matter having been heard on the appearances of counsel and respondent, and good cause appearing;

It is ORDERED that the findings and recommendations of the Disciplinary Review Board are hereby adopted, and JEROME JAY COHEN is suspended from the practice of law for a period of one year and until the further order of the Court, effective February 15, 1989; and it is further

ORDERED that the Office of Attorney Ethics is directed to conduct an audit of the books and records of JEROME JAY COHEN and to take whatever action may be appropriate in light of the findings of its audit; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said JEROME JAY COHEN as an attorney at law of the State of New Jersey; and it is further

ORDERED that respondent be and hereby is restrained and enjoined from practicing law pending his restoration to the practice of law; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### Decision and Recommendation of the
### Disciplinary Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey.

This matter is before the Board based upon three presentments filed by the District IV (Camden County) Ethics Committee.

## THE SIKORSKI MATTER

In August 1981, Paulette R. Sikorski ("grievant") engaged respondent to represent her in connection with an automobile accident in which she was a backseat passenger. The driver of the automobile was Richard Kisselnicky. His wife was also a passenger in the automobile. The Kisselnickys, who were grievant's neighbors, were also represented by respondent. Respondent filed separate complaints in behalf of his clients. One complaint named Mr. Kisselnicky as plaintiff;[1] the other

---

[1]This lawsuit was subsequently settled by new counsel.

named both Mrs. Kisselnicky and grievant as plaintiffs. Mr. Kisselnicky was not made a defendant in the latter lawsuit.

Following the accident, grievant found herself in dire financial straits. She was unemployed for almost three years. Although she attempted to work at several jobs, the injuries sustained in the accident precluded her from performing adequately. As a result of her financial hardship, grievant was forced to keep "moving to smaller places and selling furniture". Ultimately, grievant, her daughter and son were forced to seek separate living quarters "just to survive".

Respondent had not made an application for income continuation benefits in her behalf. When grievant complained to respondent about her lack of funds, she was told that she had to work in his office if she wished to earn some money. She worked for respondent for a total of three days, for which she received compensation "under the table".

In August 1983, dissatisfied with respondent's legal representation in the course of two years, grievant dismissed his services and hired new counsel. After some initial difficulties, new counsel obtained grievant's file from respondent. On the basis of certain statements by grievant about the improper manner in which grievant handled the lawsuit,[2] new counsel contacted the district ethics committee.

On September 1, 1983, respondent submitted a letter to new counsel requesting 60% of the total counsel fee as compensation for his representation in the matter. Upon reviewing with grievant the attached statement of services, new counsel filed an application with the court for a determination of the percentage attributable to respondent's legal representation. The court ruled that respondent was to receive 30% of the entire attorney fees.

---

[2]Grievant testified that respondent's improper conduct was not confined to the handling of the litigation. It included personal advances made toward her.

Upon request, respondent submitted a statement of services to the district ethics committee as well. In addition to numerous telephone calls [3] and office visits, the statement included 20 court appearances prior to trial. Grievant was not aware of any court appearances on her behalf. In fact, eight of the court appearances predated the filing of the complaint.[4] Respondent admitted that "it was a simple accident case". He testified that "I did everything I could to end it, motions for summary judgment, everything, and nothing was successful". (T 64–17 to 65–3) [5].

Respondent was unable to substantiate the innumerable court appearances listed in the statement of services. Despite repeated assurances to the district ethics committee that he would provide proof thereof, none was submitted. Respondent's adversary testified that respondent filed only three pretrial motions: one *ex parte* motion for discovery [6] and two for summary judgment. Furthermore, when the adversary filed a motion to reinstate the answer, which had been stricken, respondent failed to appear for oral argument notwithstanding the fact that he had filed opposing papers.

While respondent was still representing grievant, grievant's ex-husband filed a motion to declare their son emancipated. At that time, grievant requested respondent prepare an affidavit in opposition to the emancipation proceeding. Respondent did so. One of the paragraphs in the affidavit stated that grievant's

[3]The initial phone call was allegedly made while grievant was still in the hospital. Grievant testified that she did not make any phone calls to respondent while in the hospital.

[4]Respondent testified that three of the eight court appearances had been in municipal court, on another matter, and that "he never charged her with this thing."

[5]T denotes the transcript of the committee hearing on 7/28/86.

[6]This motion was made pursuant to *R.* 1:6–2, whereby oral argument is waived.

son could not be deemed emancipated because he was still attending school. That statement was untrue. On the date of the hearing, respondent met grievant at the courthouse and presented the affidavit for her review and signature. Grievant advised respondent that, contrary to the affidavit, her son was not enrolled in school. Respondent failed to revise the affidavit upon learning the truth from grievant. Grievant testified that she did not sign the affidavit and proceeded pro se.

After a hearing before the district ethics committee on July 28, 1986 and September 29, 1986, the panel determined that respondent had violated *DR* 7–102(A)(6) and (7) and *DR* 1–102(A)(1). The panel rendered no opinion as to whether respondent had violated *DR* 2–107(A)(3) in light of the fact that the testimony given by respondent and grievant had been insufficient to draw any conclusions concerning the validity of the services claimed to have been rendered by respondent.

THE LASPINO MATTER

On August 15, 1974, respondent filed a complaint for divorce in Camden County on behalf of Evelyn Kalazinskas, now known as Evelyn Laspino ("grievant"), against her husband, Stanley Kalazinskas. Following an uncontested divorce hearing, the Final Judgment of Divorce was granted in November 1975.

On May 13, 1977, grievant, this time represented by different counsel, obtained a court order compelling Mr. Kalazinskas to pay her the sum of $32.00 per week through the Camden County Probation Department.[7] In October 1980, respondent

---

[7]The testimony at the hearing before the district ethics committee and certain documents that were made part of the record refer to the above weekly sums as support payments. It appears, however, that they were intended as reimbursement for past or future payments that grievant was obligated to make on account of a $10,000.00 second mortgage in her name. In order to help Mr. Kalazinskas repay a debt, grievant agreed to apply for a second mortgage, provided that Mr. Kalazinskas be responsible for the monthly payments. After the divorce, it became necessary for her to file an application with the court compelling Mr. Kalazinskas to reimburse her for the mortgage payments.

filed a motion in behalf of Mr. Kalazinskas, seeking the termination of the support payments to grievant. Upon being served with the notice of motion, grievant contacted respondent. She made it clear that she would not hesitate to "file a complaint (against respondent)", if he represented Mr. Kalazinskas. Respondent confirmed he spoke to grievant and that she did not give him permission to file the motion on behalf of Mr. Kalazinskas. Grievant's objection notwithstanding, respondent filed said motion.

Subsequently to the filing, respondent withdrew as counsel of record for Mr. Kalazinskas. The latter then obtained new counsel. Grievant's testimony before the district ethics committee indicated, however, that respondent continued to have an active role in the matter, despite his withdrawal and the appearance of new counsel. Respondent denied said continued participation. He acknowledged being present in the courtroom during the hearing but only "because it was a motion day and I had to argue other matters". Grievant, however, testified respondent sat at counsel table with Mr. Kalazinskas's new attorney. The latter confirmed respondent sat at counsel table with him but only because "we both had matters coming up before the same judge at the same time". Grievant testified further respondent kept "feeding" questions to her husband's new counsel. Respondent denied this contention.

On June 12, 1982, grievant was served with a summons and complaint filed by respondent in the Cape May County District Court in behalf of Mr. Kalazinskas. The complaint sought (1) reimbursement for an alleged overpayment by Mr. Kalazinskas on account of the $32.00 weekly payments; (2) the return of certain items of furniture allegedly belonging to Mr. Kalazinskas mother; and (3) treble damages. Upon motion made by grievant's counsel, the action was dismissed without prejudice. Furthermore, respondent was disqualified for being in a conflict of interest.

The hearing before the district ethics committee took place on January 11 and March 2, 1983. At the hearing, respondent attempted to justify his representation of Mr. Kalazinskas. The divorce matter and the motion for termination of support were, in his view, unrelated inasmuch as grievant had not sought support in the divorce action and the subsequent support order had been obtained by new counsel. As to the district court complaint, respondent testified he did so because he was constantly being importuned with questions by Mr. Kalazinskas and the Probation Department concerning the alleged overpayment. He wished to "bring the case to a head". He added his motivation in filing the complaint against grievant was not to "hurt" her but to force her to resolve the controversy directly with Mr. Kalazinskas. The purpose of the treble damages clause was to compel grievant to answer the complaint.

At the conclusion of the hearing, the committee found that there had been dual representation in violation of *DR* 5–105.

THE CONTE MATTER

Cheryl Ann Conte ("grievant") was a certified shorthand reporter. In August 1985, respondent ordered a trial transcript in which respondent represented one of the parties. It was respondent's intention to file an appeal in the matter. Respondent gave grievant a trust account check to cover the deposit for grievant's services. While preparing the transcript, grievant discovered the check had been returned for insufficient funds. Grievant then contacted respondent who informed her the matter had been settled. He agreed, however, to pay grievant for work performed as of that date.

On two different occasions, grievant, in writing, demanded payment. Said demands were ignored. Subsequent telephone calls to respondent remained unanswered. Grievant then filed suit against respondent seeking payment of $80.00. Grievant obtained a court order directing the funds in respondent's trust account, approximately $75.00 at that time, be released to her.

Prior to the release of said funds, the district ethics committee held a hearing. During the course of that hearing, respondent paid grievant for her services.

The committee found respondent had knowingly issued a check with insufficient funds and had refused to pay for grievant's services. Accordingly, the committee recommended that respondent be publicly reprimanded.

THE SKALSKI MATTER

Between 1980 and 1982, respondent represented Robert Skalski ("grievant") in a lawsuit against Cacciopo Pontiac, Inc. At a court appearance before Judge Philip Gruccio, the court ruled grievant was entitled to complete discovery. Following an agreement by both counsel with respect to the scheduling of depositions, the court inquired whether respondent would be responsible for the stenographer's costs. Respondent replied he would not inasmuch as, on a prior occasion, he had been forced to bear those costs on behalf of grievant. Grievant then indicated to the court he would assume responsibility for the costs.

On March 22, 1983, Degnan and Bateman, Certified Court Reporters, filed suit against respondent, seeking the payment of $689.00 for their services. Although grievant had not been named a defendant in the original summons and complaint, the copy which he received from respondent's office included his name. That typeset, however, differed from the typeset in the balance of the summons and complaint. It was clear, and respondent so admitted, someone from respondent's office had inserted grievant's name in the pleadings without a court order.

After receiving the summons and complaint, grievant contacted the trial Judge to determine if it was necessary for him to appear at the upcoming hearing. The Judge reviewed the trial list and informed grievant that his name did not appear thereon. The Judge contacted the district ethics committee upon discovering grievant's name had been improperly added to the summons and complaint.

Subsequently, respondent filed a motion to include grievant as a third-party defendant, which motion was granted. Respondent's office, however, failed to file the third-party complaint. At the final hearing, respondent discovered that the complaint had not been filed.[8] He then attempted to file the third-party complaint in the clerk's office immediately following the hearing. When the clerk questioned the filing of the complaint post-hearing, respondent represented he was doing so at Judge Gruccio's insistence. Judge Gruccio denied any such discussion with respondent. Respondent testified he attempted to file the complaint to dispel any notion that the third-party complaint had not been prepared prior to the hearing.

Additionally, respondent filed an appeal in the Cacciopo.Pontiac matter, which was dismissed for lack of prosecution. Upon receiving the order dismissing the appeal, respondent filed a motion in the Supreme Court to be relieved as counsel for grievant. The Supreme Court returned said motion to respondent advising him the matter before the Court was closed.

In December 1982, grievant terminated the attorney-client relationship with respondent and requested his files be turned over to new counsel. It was grievant's contention that respondent refused to do so. Respondent, in turn, testified that new counsel declined representation and that subsequent new counsel failed to contact him to request the files.

A hearing before the district ethics committee was held on September 29, 1986 and November 3, 1986. The committee found that respondent had violated DR 1–102(A)(1), (3), (4), (5), and (6) by "reporting information to the court that (respondent) knew was false and by altering a court document". The committee found further that, although respondent had denied adding grievant's name to the pleadings, it was clear the name had been inserted by someone in respondent's office. Respondent, therefore, was held responsible for the actions of his

---

[8]The original complaint was still in his files.

employees. The committee found also respondent had knowingly misrepresented to the clerk's office the court's position with regard to the third-party complaint. Accordingly, the committee recommended the imposition of public discipline against respondent.

THE PATTERSON MATTER

Grievant, Joseph Patterson, was the owner-operator of a small tractor-trailer. In September 1981, grievant retained respondent to represent him in a lawsuit filed against him as a result of an accident involving his tractor-trailer and to determine whether he was covered by insurance. At that time, respondent advised him to turn the suit over to grievant's insurance company. Said company, however, subsequently disclaimed coverage for alleged failure to pay the premiums.[9] Accordingly, respondent continued as grievant's counsel in the litigation.

For the next four years, there was almost no communication between respondent and grievant about the status of the matter, in spite of the fact that grievant and/or his wife attempted to contact respondent weekly and, on occasion, twice a week. Respondent was either not available or would tell grievant not to "bother" him because his time was "valuable". On those few occasions when he was able to reach respondent, grievant was invariably told that his case had "to go to court".

Sometime in 1984, a judgment in the approximate amount of $500.00 was entered against grievant.[10] Respondent did not notify grievant of any court appearances or the outcome thereof. Accordingly, grievant had no knowledge of the judgment against him. It was not until 1985, when grievant received

---

[9]According to grievant, he submitted proof of payment to respondent, who denies having received same.

[10]The record is not clear whether the judgment was entered as a result of a summary judgment motion or by means of a panel recommendation at the time of trial.

notice that his driver's license had been suspended in Pennsylvania and New Jersey, that he became aware that judgment had been entered against him in the litigation.

Immediately after the receipt of the above notice, grievant telephoned respondent. Respondent did not offer to assist grievant in restoring his license. Pursuant to grievant's testimony, respondent's reply was that "it was (his) problem to straighten the mess out because (you are) guilty in court (sic)". Grievant retained new counsel, who negotiated an agreement with plaintiffs' attorney for the satisfaction of the judgment through monthly payments by grievant. New counsel was then able to have grievant's driving privileges restored in both states. In addition to the amount of the judgment and counsel fees, grievant sustained damages in the amount of $400.00 for transportation costs to and from Harrisburg, Pennsylvania and of approximately $1,500.00 in wages.

After receiving notice that his license had been suspended, grievant also terminated respondent's representation in another matter involving a separate vehicle accident. Despite grievant's request for the return of his files, respondent refused to do so until he received payment for attorney's fees. Ultimately respondent released grievant's files.

At the conclusion of a hearing held on July 28, 1986 and November 3, 1986, the district ethics committee found that respondent had knowingly failed to pursue grievant's request to determine whether grievant was covered by insurance; had failed to keep grievant informed of the status of the case; had failed to inform grievant of the summary judgment and its ramifications, thus causing grievant's loss of his driver's license and wages; had failed to assist grievant in his efforts to restore his license; had neglected pursuing the matter, thereby causing financial injury to grievant; had been grossly negligent in handling the matter; and had failed to turn over grievant's files upon request. The district ethics committee concluded that respondent had violated *DR* 6–101(A)(1), (2), (3) and *DR*

2–110(A)(2). Accordingly, the committee recommended that respondent be publicly reprimanded.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that, with one exception, the conclusions of the committee in finding respondent guilty of unethical conduct are fully supported by clear and convincing evidence. Moreover, the Board is satisfied that respondent's actions, taken together, exhibit a pattern of neglect.

The Board does not agree with the committee's finding that, in the Skalski matter, respondent should be held responsible for the actions of the employees in his office.[11] Respondent testified that someone from his office, not himself, added grievant's name as a defendant to the summons and complaint without the court's permission. Respondent testified that he did not direct the alteration and that the complaint was forwarded to Skalski without his further review. In view of the foregoing testimony, the Board finds that the allegation respondent had deliberately altered a court document has not been sustained by clear and convincing evidence. *In re Shaw*, 88 *N.J.* 433; 437 (1982).

With respect to the Sikorski matter, it is clear that the statement of services submitted to the court and to the district ethics committee did not accurately reflect the services rendered by respondent. It strains the imagination to believe respondent could have made 20 pre-trial court appearances in a matter which he conceded to be simple and which new counsel ultimately settled for a relatively small sum, $11,500.00. At most, respondent appeared in court on two occasions for oral argument on two motions for summary judgment which he filed. The third motion was decided on the papers. Moreover,

---

[11]*RPC* 5.3(c), which delineates an attorney's ethical responsibility over his non-legal employees, was adopted effective September 1984; there is no equivalent provision with the former Disciplinary Rules.

eight of the alleged court appearances which predated the filing of the complaint took place in municipal court and were unrelated to the personal injury matter.

There was extensive testimony in connection with this and four other separate matters involving respondent's unethical conduct. In addition to grievant and respondent, numerous witnesses testified at the several hearings before the district ethics committee. Each time, respondent steadfastly maintained that he would produce sufficient proof to corroborate the statement of services. The records were invariably "downstairs", "in the other room" or "at the office", a mere two blocks away from the hearing room. Yet, each time he failed to submit any proof. It is inconceivable respondent would jeopardize his privilege to practice law by making unfulfilled promises to produce records which, if accurate, could lead to his exoneration.

Respondent testified that an associate in his office prepared the statement of services. He conceded, however, that, in submitting it to the court and to the district ethics committee, he had adopted the contents therein. Accordingly, the Board finds that any misrepresentations made by respondent's associate are tantamount to his own. The statement of services was so recklessly prepared as to amount to a knowing misrepresentation. The misstatements and exaggerations contained therein show a wanton disregard for an attorney's obligation both to his clients and to the court. *In re Wolk*, 82 *N.J.* 326, 327 (1980) (affidavit of services submitted to court was a gross intentional exaggeration of services rendered, to enrich respondent at the expense of his client, a paralyzed eight-year old boy; coupled with taking financial advantage of another client, respondent was disbarred).

Additionally, the Board finds respondent was grossly negligent when he prepared for grievant's signature an affidavit containing an untrue statement. Even if respondent is to be believed when he testified that, at the time he prepared the

affidavit, grievant had informed him her son was attending school, it is difficult to comprehend why he did not revise the affidavit upon learning the truth from grievant. The Board finds that respondent's conduct violated *DR* 1–102(A)(1), (3), (4), (5) and (6); *DR* 2–106(A) and (D); *DR* 2–107(A)(3); and *DR* 7–102(A)(6) and (7).

With regard to the Laspino matter, the Board finds respondent created a definite conflict of interest situation when he undertook to represent grievant's ex-husband in an action against his former client in the underlying divorce action. Respondent's argument that the new matters were unrelated to the matrimonial action is devoid of merit. There is a clear connection between the prior representation and the new matter. *Advisory Committee on Professional Ethics Opinion No. 216*, 94 *N.J.L.J.* 677 (1971). *R.* 1:19–6. That the final judgment of divorce did not provide for support payments is totally irrelevant. Where a member of the bar represents a litigant in a cause, he should not thereafter represent the opposing party in any step of the proceedings in or arising out of the same cause. *In re Blatt*, 42 *N.J.* 522, 524 (1964) (attorney who represented wife in a divorce action which made no provision for support payments and, subsequently, represented husband in post divorce motions for support and reduction thereof was publicly reprimanded). Moreover, grievant promptly protested his representation of her ex-husband. Prudence would have dictated, at that point, that respondent voluntarily withdraw. Instead, new counsel for grievant was forced to make an application to the court for respondent's removal as counsel, which was granted.

More egregious was respondent's conduct in seeking treble damages against his former client. It is difficult to envision how respondent could not have intended to "hurt" grievant, in view of the punitive nature of an award for treble damages.

The Board finds respondent's conduct in this matter unethical and in violation of *DR* 5–105(C).

As to the Conte matter, respondent committed a serious ethical infraction when he paid for the deposit on the transcript with a check issued against his trust account, in violation of *DR* 9–102(A). As if that alone were not improper, the check was returned for insufficient funds. Additionally, respondent deliberately ignored grievant's numerous requests, both orally and in writing, for that payment. Grievant testified that, during one particular telephone conversation, she was told to remain in the courthouse during her lunch hour as respondent would be bringing her money at that time. She complied. Not only did respondent fail to appear but no reasonable excuse, explanation or apology was offered. Respondent testified that the trust account lacked sufficient funds because, following the settlement of the appeal, the account was closed. He testified further grievant did not present the check for payment until one week after the check was issued. Even assuming respondent's testimony to be credible, it is difficult to comprehend why respondent failed to take appropriate action, at the time that he closed the account, to ensure grievant would be paid. Certainly the account statement would have shown grievant's check was still outstanding.

The Board finds respondent's conduct inexcusable and violative of the ethics rules governing the profession.

With respect to the Patterson matter, the Board is satisfied the record fully supports the conclusions of the committee. Respondent was retained by grievant to file a declaratory action against the insurance company, which was denying coverage on the basis of grievant's failure to pay the premiums. Although presented with proof of payment from his client, respondent neglected to pursue the matter. When respondent was retained, he owed him a duty to pursue his interests diligently. *In re Goldstaub*, 90 *N.J.* 1, 5 (1982); *Matter of Schwartz*, 99 *N.J.* 510, 518 (1985); *Matter of Smith*, 101 *N.J.* 568, 571 (1986).

Additionally, respondent failed to keep grievant reasonably informed concerning the status of the litigation. The Pattersons testified that, for four years, they called respondent's office weekly or twice a week. Their reasonable requests for information were consistently ignored. On those few occasions when respondent would speak with one of them, they were told that the case "had to go to court", leading them to believe respondent was awaiting a trial date.

Respondent's most deplorable conduct occurred when he allowed a summary judgment to be entered, without any notification to his client of a court appearance or of the court's decision. He failed to advise grievant, either by telephone, letter or in person, that a $500.00 judgment had been entered against him, thus leading him to believe the litigation was still pending. When grievant learned about the judgment, it was not by means of a notification from respondent, his attorney in the matter. It was by the loss of his driver's license, on which he depended, as a truck driver, for his and his family's livelihood. An attorney's failure to communicate with his clients diminishes the confidence the public should have in the members of the bar. *Matter of Stein*, 97 *N.J.* 550, 563 (1984).

Respondent clearly neglected the matter entrusted to him for legal pursuit; failed to act promptly and reasonably to keep his client informed of the status of his case; refused to comply with reasonable requests for information and, when grievant terminated his representation and requested that he return the file on another matter, refused to do so, demanding the payment of his fee. Such "transgressions reflect on the competency and integrity of the entire Bar". *In re Barry*, 90 *N.J.* 286, 291 (1982).

Moreover, when he contacted respondent, grievant was told that he had lost the suit and that he would have to pay the judgment. Respondent did not offer to assist him in restoring his license. Grievant was forced to hire new counsel to negotiate a settlement to satisfy the judgment and to restore his

license, at great expense. He suffered extensive damages consisting of the amount of the judgment, counsel fees, transportation costs and loss of pay for three weeks, the time taken to restore his license.

The common thread running through the above ethical transgressions clearly establishes a pattern of neglect, in violation of *DR* 6–101(A)(2). In each of the foregoing cases, it was evident that respondent failed to diligently pursue the interests of the clients, to respond to their legitimate requests for information and to keep the clients reasonably informed about the status of their matters, to the clients' detriment. Negligence in multiple matters establishes a pattern of neglect. *In re Eisenberg*, 75 *N.J.* 454 (1978); *In re Goldstaub, supra*, 90 *N.J.* 1 (1982). The Board finds that respondent's conduct violated *DR* 6–101(A)(2).

Additionally, the record discloses no redress to Ms. Sikorski, Ms. Laspino and Mr. Patterson. As new counsel for Ms. Sikorski testified, when the matter was turned over to him, he had to start anew in light of respondent's mishandling of the litigation. In spite of respondent's impropriety and inaction, he ultimately received 30% of the total counsel fee. Respondent did not return to Ms. Sikorski any portion thereof.

In the Laspino matter, grievant was forced to hire new counsel in order to have the complaint in the district court dismissed and to have respondent disqualified as counsel for her ex-husband. The record revealed that Ms. Laspino paid a $1,000.00 retainer to new counsel. She was not compensated for respondent's misconduct.

More significantly, Mr. Patterson suffered extensive monetary injury, as set forth above, in addition to the emotional stress which he had to endure by the loss of his driver's license, on which he and his family depended for their livelihood. He, too, received no reparation from respondent.

Nonetheless, the purpose of disciplinary proceedings is not the punishment of the offender, but "protection of the public against the attorney who cannot or will not measure up to the

high standards of responsibility required of every member of the profession". *Matter of Getchius*, 88 *N.J.* 269, 276 (1982), citing *In re Stout*, 75 *N.J.* 321, 325 (1978).

Upon consideration of the relevant facts, which include a letter of private reprimand on February 6, 1979, the Board is of the opinion that the offenses rise to a level compelling a one-year suspension. But for the fact that respondent's most glaring ethical transgressions occurred some six years ago, the discipline imposed would have been more severe. Here, the public interest in proper and prompt discipline is necessarily and irretrievably diluted by the passage of time. *In re Verdiramo*, 96 *N.J.* 183, 187 (1984).

The Board further recommends that, in view of the cavalier attitude exhibited by respondent in keeping his books and records, an audit be conducted by an auditor to be selected by the Office of Attorney Ethics. One member did not participate.

The Board further recommends that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.