576 A.2d 855

IN THE MATTER OF JEROME JAY COHEN, AN
ATTORNEY AT LAW.

Argued June 7, 1990—Decided July 20, 1990.

*William R. Wood,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

No appearance was made on behalf of respondent.

PER CURIAM.

This matter arises out of a presentment filed by the District IV Ethics Committee (DEC), which concluded that respondent had committed unethical conduct. The Disciplinary Review Board (DRB) agreed that respondent had engaged in unethical conduct that violated *RPC* 1.4, by failing to communicate with his client; *RPC* 1.3, by failing to pursue a client's case diligently; *RPC* 1.1(b), by exhibiting a pervasive pattern of negligence and neglect; and most importantly, *RPC* 8.4(c), by misrepresenting the status of the case to his client, and by altering the filing date on the complaint in an attempt to deceive the court and his adversaries. The DRB recommended that respondent be suspended from the practice of law for two years, that suspension to run consecutively to the one-year suspension he was then serving.

I

Respondent is a sole practitioner who was admitted to the bar in 1965. He maintained his office in Cherry Hill until February 15, 1989, when this Court suspended him from the practice of law for one year for numerous ethical violations, including:

1) his submission of a statement of services that was so recklessly prepared as to amount to a knowing misappropriation, 2) gross negligence in preparing for signature an affidavit containing an untrue statement, 3) his representation of one grievant's ex-husband in an action in which JEROME JAY COHEN sought treble damages against his former client, and 4) his payment of a transcript deposit with a trust account check, the foregoing conduct in violation of *DR* 1–102(A)(1), (3), (4), (5) and (6); *DR* 2–106(A) and (D); *DR* 2–107(A)(3); *DR* 7–102(A)(6) and (7); *DR* 5–105(C) and *DR* 9–102(A). [*In re Cohen*, 114 *N.J.* 51, 552 *A.*2d 985 (1989).]

Respondent also was privately reprimanded on February 6, 1979, under *DR* 1–102(A)(4) for conduct involving misrepresentation to an expert.

This matter arises out of respondent's handling of a claim resulting from a three-car collision that occurred in January 1984 involving his client Samuel Joftis. Respondent was retained by Joftis to pursue a claim against two drivers and the

owner of the driveway where the accident occurred. In December 1984 Joftis settled with one of the drivers and signed a release. The facts with respect to the other parties in the suit are accurately described by the DRB:

According to grievant's testimony, respondent told him that suit had been filed against the other parties at the same time that it was filed against the party with whom he had settled his claim. Grievant telephoned respondent every month to ask about the status of the other lawsuits. Respondent told grievant that he was waiting to get a docket number and a trial date. In August 1986, respondent gave grievant a docket number that turned out to be false.

On January 29, 1986, twelve days after the running of the statute of limitations, respondent finally filed suit against the other parties. Thereafter, respondent served the complaint on counsel for the two remaining defendants. However, the filing date on the served copies of the complaint had been altered to read January 9, instead of January 29, 1986, to reflect a filing date within the statute of limitations period. Eventually, both defendants realized that the case had been filed out of time. Motions to dismiss were filed, to which respondent did not object. The first dismissal was granted by order dated August 29, 1986; the second motion was granted on April 9, 1987. Even though respondent knew that the complaint had been dismissed and that further legal action was barred by the statute of limitations, he continued to tell his client for two more years, that the matter was proceeding apace.

Moreover, throughout the entire disciplinary proceeding respondent has been completely unresponsive and uncooperative. He did not attend the DEC or DRB hearings. At the conclusion of the hearing the DEC concluded he had been guilty of unethical conduct. The DRB found the conclusions of the DEC were supported by clear and convincing evidence:

Respondent failed to communicate with his client about the status of the matter, in violation of *RPC* 1.4(a). Moreover, although retained in January 1984, shortly after the grievant was injured, respondent did not file the complaint until after the statute of limitations had run. Once retained, respondent owed grievant a duty to pursue his interests diligently. *See Matter of Smith*, 101 *N.J.* 568, 571 [503 *A.2d* 846] (1986); *Matter of Schwartz*, 99 *N.J.* 510, 518 [493 *A.2d* 1248] (1985); *In re Goldstaub*, 90 *N.J.* 1 [446 *A.2d* 1192] (1982). Respondent's abrogation of this duty violates *RPC* 1.3. Additionally, this negligence, combined with respondent's earlier actions that resulted in a one-year suspension on February 1, 1989, demonstrates a pervasive pattern of negligence, in violation of *RPC* 1.1(b).

Compounding his negligence, respondent continued to assure his client that the case was progressing, even after the complaint had been dismissed. Public confidence in the bar is diminished when an attorney falsely represents to a client that a case is proceeding smoothly. A client should not continue to suffer

the consequences of being told that his or her case is under control, when it is not. *In re Goldstein*, 97 *N.J.* 545, 549 [482 *A.*2d 942] (1984). This misrepresentation was a violation of *RPC* 8.4(c).

Most egregiously, the Board finds, by clear and convincing evidence, that respondent altered the filing date of the complaint in an attempt to mislead his adversaries and the court into believing that it had been filed in a timely manner. This misconduct requires greater discipline than the public reprimand recommended by the ethics committee. Respondent intentionally committed a fraudulent act when he altered the filing date, contrary to *RPC* 8.4(c). In cases of this nature, where an attorney alters an official document to conceal his failure to act, a lengthy suspension is the minimum discipline required.

## II

It is well-established that the purpose of discipline is not to punish the attorney but to protect the public from an attorney who does not meet his or her professional responsibilities. There can be no doubt that respondent has failed to meet his professional responsibilities, as evidenced by his prior ethical violations, resulting in a private reprimand, a one-year suspension, and by these present violations.

Respondent's ethical violations are many. He intentionally altered an official document, a serious offense that warrants a lengthy suspension. *In re Yacavino*, 100 *N.J.* 50, 494 *A.*2d 801 (1985) (forging judge's name to an adoption order warranted three-year suspension); *In re McNally*, 81 *N.J.* 304, 406 *A.*2d 1315 (1979) (forging sheriff's name to deed of foreclosure warranted two-year suspension).

Additionally, an attorney has a duty to cooperate with the disciplinary committees. *In re Grinchis*, 75 *N.J.* 495, 496, 384 *A.*2d 137 (1978). Respondent has totally failed to do so. Most significantly, however, respondent shows no remorse or improvement in his conduct. Indeed, after his one-year suspension the Office of Attorney Ethics (OAE) had to obtain an order appointing an attorney as trustee for respondent's law practice to protect his clients. In his one-year suspension order we ordered respondent to comply with Administrative Guideline No. 23, which sets forth the procedures attorneys should follow

in informing their clients, adversaries, and the courts when they are suspended from practice. Respondent failed to do so. The OAE received several calls from respondent's clients notifying it that he had not told them of his suspension nor of the whereabouts of their files. Repeated attempts to communicate with respondent failed.

█ Respondent offers no explanation or mitigating factors for his egregious conduct. His failure to comply with Guideline 23, his numerous ethical infractions, his continuous unresponsive and uncooperative attitude towards his clients, the courts, and the entire disciplinary system lead us to conclude that the two year-suspension recommended by the DRB does not represent sufficient discipline. We note that when the DRB recommended a two-year suspension to be served consecutive to the prior one-year suspended term respondent was then serving, it did not have before it respondent's complete failure to comply with Guideline 23.

Respondent's continuous disregard of his clients, the courts, and the disciplinary system lead us to conclude that disbarment is the only appropriate discipline. We are unable to conclude that respondent will improve his conduct.

Respondent shall reimburse the Ethics Financial Committee for administrative costs.

So ordered.

*For disbarment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

### ORDER

It is ORDERED that JEROME JAY COHEN, is disbarred, effective immediately; and it is further

ORDERED that respondent's name be stricken from the roll of attorneys and that he be permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with disbarred attorneys, and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.