DATA SYSTEMS ANALYSTS, INC., a Delaware Corporation, Plaintiff,

v.

The NETPLEX GROUP, INC., a New York corporation, et al., Defendants.

Civ.A.No. 97–4562(JBS).

United States District Court, D. New Jersey.

April 20, 1999.

---

Lawrence Hoffman, Andrew I. Silfen, Thomas J. Fleming, Olshan, Grundman, Frome & Rosenzweig, West Orange, NJ, Michael A. Lampert, Saul, Ewing, Remick & Saul, Princeton, NJ, for defendant.

David B. Rubin, Metuchen, NJ, for Lawrence Hoffman.

Carl D. Poplar, Poplar & Eastlack, Turnersville, NJ, for Olshan, Grundman, Frome & Rosenzweig, LLP.

Allyn Z. Lite, Goldstein, Lite & DePalma, Newark, NJ, for Aaron R. Cahn.

## OPINION

KUGLER, United States Magistrate Judge.

No undertaking is less rewarding for a Court than the imposition of sanctions on an errant attorney. Such is the predicament Lawrence A. Hoffman, of the firm of Olshan, Grundman, Frome & Rosenzweig places this Court in. By all accounts an upstanding member of the bar of the District of Columbia, Maryland and New York (along with their respective federal courts), he was admitted *pro hac vice* in this case by Order of March 19, 1998. Once involved in this case, he engaged in a series of increasingly problematic and at times downright bizarre actions.

The difficulties began early on, with the initial Order of this Court requiring Rule 26(a)(1) disclosures by February 6, 1998. That was not honored by Mr. Hoffman, necessitating another conference and a new Order extending the deadline for disclosures to March 11, 1998.

Unfortunately, Mr. Hoffman thereafter violated discovery Orders dated August 10, 1998 and November 9, 1998, by untimely compliance. It took almost four (4) months in one instance for him to comply. He never even responded to his adversary's October 16, 1998, motion to compel. And he never complied with this Court's Order of December 23, 1998 (these violations are detailed in the transcript of the Court's hearing of January 29, 1999).

Peter J. Cronk, Kelly D. Eckel, Maura I. McInerney, Duane, Morris & Heckscher, Philadelphia, PA, for plaintiff.

Their patience obviously worn thin, Hoffman's adversaries sought leave to file a motion for sanctions which this Court granted.

That set the stage for the hearing on January 29, 1999. The Court will not relate in excruciating detail the disaster which befell Mr. Hoffman at that hearing. As the transcript reveals, Hoffman's representations to the Court were at best inconsistent with the facts. The Court used language to describe his conduct which it had never in over six years as a judge used before and hopes to never have to use again. The subject areas which concerned the Court include the World Link software given to plaintiff's counsel, T11 to T37, the availability of documents, T61 to T63, the "affirmation" filed with the Court, T93 to T94, prior telephone conferences, T95 to T96, compliance with the Court's Order of December 23, 1998, T99 to T104, the file kept by Mr. Hoffman, T128 to T131, and the opinion letter T140 to 141.

In addition to imposing sanctions upon the defendants and counsel, the Court issued an Order to Show Cause on January 29, 1999 why the *pro hac vice* admission of Mr. Hoffman should not be revoked and sanctions entered against him personally. At that hearing on February 26, 1999, Mr. Hoffman was ably represented by David B. Rubin, Esq. He presented evidence to the Court that Mr. Hoffman was ill and had come under the care of Steven A. Fayer, M.D., a board certified psychiatrist. Though unable to appear that day, Dr. Fayer had prepared two short letters describing Mr. Hoffman's condition and treatment.

Mr. Hoffman first sought treatment on February 8, 1999. He saw Dr. Fayer again on February 25, 1999. Dr. Fayer diagnosed a "clinically significant depressive disorder," and he prescribed Zoloft (an anti-depressant) and Ativan (anti-anxiety). The doctor wrote that "it would be difficult for him to be effective in functioning as a Trial Attorney under the present circumstances."

The origin of the depression is not revealed. But Dr. Fayer indicates it has been a problem "over the last year." Furthermore

"His concentration, attention and ability to keep up with his work have been negatively affected. He has been irritable and experiences problems in staying focused and completing tasks. His sleep has been disrupted. He has expressed feelings of hopelessness and helplessness. He has also expressed passive suicidal ideation."

Mr. Rubin also proffered to the Court that Mr. Hoffman had experienced an illness in his family and marital discord, which was confirmed by the testimony of an associate of the law firm. Witnesses for the firm detailed their investigation of the matters being handled by Mr. Hoffman and his failure to inform the clients and that firm of the repeated Orders this Court entered. Significantly, it is only in this and another case pending in the United States District Court for the District of New Jersey, where Mr. Hoffman neglected his files. He seems to have operated consistently in his other legal matters. It was also revealed that the firm fired Mr. Hoffman.

At the conclusion of the hearing on February 26, 1999, as stated on the record, the Court orally ordered the *pro hac vice* admission of Mr. Hoffman revoked and further required that he notify all bars of which he is a member of this Court's action. Mr. Rubin orally sought reconsideration, which was taken under advisement.

Thereafter, by letter of March 4, 1999, two members of Hoffman's former firm stated Hoffman had retained an attorney who had informed the firm that Hoffman was "now fit to practice law" and threatened to sue the firm on Hoffman's behalf. The Court invited Mr. Rubin to respond to this letter.

He did so by letter of March 23, 1999, first raising the interesting question of why the firm felt it necessary to inject its continuing dispute with Hoffman into this proceeding. Mr. Rubin thereafter makes an impassioned plea for leniency, asserting that Mr. Hoffman's conduct was "aberrational and not within his control."

As this Court recently stated in *Cannon v. Cherry Hill Toyota,* —— F.Supp.2d ——, 1999 WL 157684 (D.N.J. February 25, 1999), the Court has the inherent power to sanction the attorneys who come before it. *See* L.Civ.R. 104.1. Attorneys admitted *pro hac vice* are within the Court's disciplinary jurisdiction for alleged misconduct. L.Civ.R. 104.1(h). Revocation

of *pro hac vice* admission is a recognized sanction for violation of court orders or disciplinary rules. *See Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir.1980) ("At a minimum, a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of pro hac vice status.").

Here, as related above, Mr. Hoffman violated a series of Court Orders. Moreover he arguably ran afoul of R.P.C. 1.1(b), 1.4(a), 3.3(a)(1), 3.4(d) and 8.4(c), in his lack of candor to the Court and his failure to keep his clients advised of the litigation. And *See* L.Civ.R. 103.1 (effective March 31, 1999), adopting the American Bar Association, *Guidelines for Litigation Conduct.* For those reasons, at the very least his *pro hac vice* admission should be revoked. *See Eagan v. Jackson*, 855 F.Supp. 765, 791 (E.D.Pa.1994) (revoking the pro hac vice admission of a New Jersey attorney admitted to practice in the United States District Court for the Eastern District of Pennsylvania for breach of duty of candor).

Mr. Hoffman, however, asserts that his illness excuses or mitigates his conduct such that no disciplinary action be taken. This Court follows the Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court. L.Civ.R. 103.1. This Court also generally follows the New Jersey Supreme Court's interpretation of the Rules. *Sim Kar Lighting Fixture Co. v. Genlyte, Inc.*, 906 F.Supp. 967, 977 (D.N.J.1995).

In dealing with psychiatric illness, the New Jersey Supreme Court has consistently stated that "there may be circumstances in which an attorney's loss of competency, comprehension, or will may be of such a magnitude that it would excuse or mitigate conduct that was otherwise knowing and purposeful." *In re Goldberg*, 109 N.J. 163, 168, 536 A.2d 224 (1988); *In re Bock*, 128 N.J. 270, 273, 607 A.2d 1307 (1992); *In re Trueger*, 140 N.J. 103, 116, 657 A.2d 847 (1995).

█ However, as long ago as 1978, the Court noted

"with some concern the growing tendency on the part of attorneys charged with mis-conduct to have themselves admitted to a hospital for depression or anxiety and then assert temporary mental disorder as the cause of their wrongful actions. In fact, mental disability, even if genuine, may not be a defense to a charge of misconduct. Primary considerations are fitness to practice law and protection of the public." [citations omitted]

*In re McManus*, 75 N.J. 238, 241 n. 1, 381 A.2d 352 (1978). The standard an attorney must meet is difficult. The lawyer must demonstrate he or she was "out of touch with reality or unable to appreciate the ethical quality of his [or her] acts." *In re Bock*, 128 N.J. at 273, 607 A.2d 1307; *In re Greenberg*, 155 N.J. 138, 156, 714 A.2d 243 (1998).

█ Even in those cases where the Court concluded the conduct was "aberrational and not likely to occur again," *In re Farr*, 115 N.J. 231, 236, 557 A.2d 1373 (1989), *In re Giordano*, 123 N.J. 362, 368, 587 A.2d 1245 (1991), that mitigation only serves to prevent the imposition of the most severe sanctions. *In re Bock*, 128 N.J. at 274, 607 A.2d 1307.

In the *Trueger* case, the attorney was suspended from the practice of law for one year for making false representations to the client about the status of the case, for failing to cooperate in the ethics investigation, for gross negligence, and for conduct involving dishonesty, fraud, deceit or misrepresentation. He claimed a psychological impairment. He presented a report from his physician attesting to "severe emotional stress that clearly was causally related to his difficulties responding to all of his responsibilities." 140 N.J. at 107, 657 A.2d 847. As of the date of his ethics hearing he was taking Prozac and Valium and his physician found that "he seems to have recovered to more than a sufficient degree to allow him to perform in a professional and timely manner." The Supreme Court rejected his psychiatric defense because there was no proof he was at any time out of touch with reality or unable to appreciate the ethical quality of his acts. 140 N.J. at 116–117, 657 A.2d 847.

The attorney in *Greenberg* presented the testimony of two psychiatrists to support a claim he was out of touch with reality and thus shouldn't be disbarred for misappropria-

tions from his law firm. In rejecting the defense, the Supreme Court observed that neither of the experts testified that during the time he was stealing money from his law firm he was unable to appreciate the difference between right and wrong or the nature and quality of his acts. 155 N.J. at 157, 714 A.2d 243. Tellingly, the Court also noted that during the times he was stealing from the firm, he admitted he was "trying cases and functioning as an attorney." 155 N.J. at 157, 714 A.2d 243.

■ The primary reason for attorney discipline is not to punish the attorney but rather to preserve the confidence of the public in the integrity and trustworthiness of lawyers in general. *In re Greenberg,* 155 N.J. at 161, 714 A.2d 243. When an attorney falsely represents to a client that his or her case is proceeding smoothly, public confidence in the bar is undermined. *In re Cohen* 120 N.J. 304, 306, 576 A.2d 855 (1990). Clients must not suffer the consequences of being told their case is under control when it is not. *In re Goldstein,* 97 N.J. 545, 549, 482 A.2d 942 (1984). Such misrepresentations by an attorney are intolerable. *In re Trueger,* 140 N.J. at 116, 657 A.2d 847.

In reviewing these authorities and the facts presented to the Court, the sanction is appropriate. Indeed, many may argue the Court is lenient, particularly in view of the one year suspension ordered in *Trueger.* But this Court is convinced that revocation of the admission to this Court is appropriate.

Furthermore, it is appropriate for the authorities in the jurisdiction wherein he is admitted to determine if further action is necessary. In revoking an attorney's pro hac vice admission, the Court in *Eagan v. Jackson,* 855 F.Supp. at 791, states:

"The Court concludes that under the circumstances, the most appropriate course of action is to revoke [counsel's] pro hac vice admission. Though the Court finds that his conduct rose to a level that may be considered a breach of the Rules of Professional Conduct, it is not this Court's function to adjudge whether or not [counsel's] conduct should result in some manner of professional discipline. That determina-

tion is properly reserved to the appropriate disciplinary body."

The same is true here. Consequently, the admission *pro hac vice* of Lawrence A. Hoffman, Esq., shall be revoked and he shall be required to notify all bars of which he is a member, and any jurisdiction to which he applies for admission, of this Court's action. He shall by affidavit, notify this Court when he has done so.