IN THE MATTER OF JOHN P. YETMAN, JR., AN ATTORNEY AT LAW.

January 12, 1989.

### ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that JOHN P. YETMAN, JR., of MOUNT HOLLY, who was admitted to the Bar in 1976, be publicly reprimanded: 1) for his gross negligence and lack of due diligence in violation of *DR* 7–101(A)(1) and (2) and *RPC* 1.1(a) and 1.3, in his representation in an estate matter, 2) for his failure to communicate with his client, in violation of *DR* 7–101(A) and *RPC* 1.4(a), and 3) for his failure to comply with his promise made at an ethics committee hearing, to turn over the file to a new attorney without delay, and good cause appearing;

It is ORDERED that the findings and recommendations of the Disciplinary Review Board are hereby adopted, and JOHN P. YETMAN, JR. is publicly reprimanded; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of JOHN P. YETMAN, JR. as an attorney at law of the State of New Jersey; and it is further

ORDERED that JOHN P. YETMAN, JR. reimburse the Ethics Financial Committee for appropriate administrative costs.

### APPENDIX

*Decision and Recommendation of the*
*Disciplinary Review Board*

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey.

This matter is before the Board based on a presentment filed by the District III–B (Burlington County) Ethics Committee.

In April 1984, respondent was retained by Claire Bloom ("Grievant"), an elderly woman, to handle the administration of the estate of her deceased nephew, Peder N. Bloom, a friend of respondent's. Pursuant to respondent's testimony, he had no experience in estate matters. When he undertook the representation, however, it was his belief that he could handle it because it appeared to be a simple matter with a small estate. Complications, however, soon developed. The existing will was very old and the heirs and the executor could not be located. Those complications were not initially anticipated by respondent. He conceded at the ethics hearing that the better course of conduct, at that juncture, would have been to refer the file to another attorney. This he failed to do. As respondent testified,

> "At that point, quite frankly, the matter began to scare me, and it became a case of my not knowing really what to do with it, and probably at that point waiting. This is not something that I did for personal gain, because I—I really never intended, and I think I made it clear to Miss Bloom, to charge anything for my services, because I didn't think that it would be a complicated case, and I thought I could resolve it very quickly. And as it turned out, I guess I became afraid of the file, because—because of uncertainties as to how to proceed with it." (T6–21 to 25, T7 1 to 9)[1]

Not apprised of any developments in the representation, between April 1984 and August 1986 grievant wrote numerous letters and made numerous telephone calls to respondent to inquire about the status of the matter. Respondent ignored her requests for information.

Grievant then, on two separate occasions, contacted two other attorneys requesting assistance in bringing the estate matter to a quick resolution. Similarly, the attorney's requests for information produced no response from respondent. The last communication that grievant had with respondent took place on August 3, 1986, at which time he forwarded her a document to be signed and requested some information which she promptly provided. She did not hear from him after that.

---

[1]T denotes the transcript of the ethics hearing on December 14, 1987.

Pursuant to grievant's testimony, she was eager for the matter to be finalized because of certain penalty deductions on a bank account which she held jointly with her deceased nephew. Although the monthly statements were being sent to respondent, he failed to take any steps to correct the deductions. Ultimately, the bank discontinued the penalty deductions when her nephew's secretary intervened in her behalf.

On November 6, 1986, the committee's secretary sent a letter to respondent enclosing a copy of the grievant's letter and requesting that respondent submit a written response thereto. Respondent did not respond to the letter. On June 5, 1987, the committee investigator wrote to respondent, requesting that he contact him in order to arrange a meeting to discuss the ethics matter. Once again, respondent failed to respond to the committee's request for information. Prior to the June 5 letter, the investigator had attempted to call respondent on three different occasions, leaving messages on respondent's answering machine. Those phone calls were ignored. On July 7, 1987, the investigator sent a second letter to respondent requesting that he contact him immediately and putting respondent on notice that, in the event of failure to respond, the committee would recommend that the Office of Attorney Ethics seek respondent's suspension from the practice of law. Respondent ignored that letter as well.

On October 23, 1987, a formal ethics complaint was filed, charging respondent with failure to act with reasonable diligence in representing the client, failure to keep the client reasonably informed and to comply with her requests for information, and failure to respond to lawful demands for information by the committee, in violation of *RPC* 1.3, 1.4(a) and 8.1(b). Respondent filed a timely answer.

At the committee hearing, on December 14, 1987, respondent apologized to the committee members for his failure to respond to their requests for information and to grievant for the negligent handling of the matter. He appeared genuinely contrite.

He was unable, however, to advance any mitigating factors or otherwise offer a reasonable explanation for his failure to cooperate with the initial requests by the committee. In response to the committee's concern that the matter still had not been brought to a conclusion, respondent, on that day, suggested that the matter be turned over to an attorney experienced in estate matters. He suggested the name of a local attorney and agreed to accept full responsibility for the payment of any legal fees incurred with the resolution of the matter as well as any penalties or charges suffered by the estate. He assured the committee that he would turn the file immediately to the new attorney. He also promised to forward to the presenter a copy of the letter transmitting the file. When the committee voiced its concern that the new attorney might be unwilling to undertake representation in the matter, respondent assured the committee that

I'll be in contact with (the presenter) and by the end of the day I'll have someone to do this (T23–13 to 15).

Following the conclusion of the hearing, the committee found that respondent had violated *RPC* 1.3, by failing to actively work on the administration of the estate and failing to conclude the matter in three and one-half years; *RPC* 1.4(a), by neglecting and refusing to answer telephone calls and written inquiries from grievant and her attorneys; and *RPC* 8.1(b), by failing to cooperate with the committee's investigation. The committee recommended that respondent by publicly reprimanded.

On February 1, 1988, approximately six weeks after the committee hearing, grievant contacted the presenter to inform him that respondent had failed to turn the file over to new counsel, in spite of respondent's repeated assurances to the committee that he would do so forthwith. In early March 1988, Thomas J. McCormick, Esq., of the Office of Attorney Ethics, wrote a letter to respondent requesting that he forward the file to counsel immediately. Respondent failed to comply with Mr. McCormick's request. In mid-March, when he appeared at respondent's office on an unrelated matter, Mr. McCormick

took possession of the file himself and forwarded it to grievant's new attorney.

At the Board hearing, respondent explained that his noncompliance had not stemmed from arrogance but, rather, from fear and ignorance. He added that he had "frozen up" on this matter, that

(i)t was something that bothered me and something that I suppose I tried to hide from and continued to try to hide from. (BT16–5 to 8) [2]

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the committee in finding respondent guilty of unethical conduct are fully supported by clear and convincing evidence.

 From April 1984 through March 1988, respondent grossly neglected the handling of the estate matter. Although aware, soon after he undertook the representation, that he would be unable to handle the complications which had developed, he failed to so advise the client and to discontinue his representation, in spite of his later acknowledgment that the better course of practice would have been to refer the matter to an attorney experienced in estate matters. Instead, respondent adopted a "head-in-the-sand" attitude and neglected to bring the matter to a quick resolution by turning it over to new counsel. When retained, respondent owed his client a duty to pursue her interests diligently. *See Matter of Smith,* 101 *N.J.* 568, 571 (1986); *Matter of Schwartz,* 99 *N.J.* 510, 518 (1985); *In re Goldstaub,* 90 *N.J.* 1, 5 (1982). The Board finds by clear and convincing evidence that respondent's conduct with respect to this matter constituted gross neglect and lack of due diligence, in violation of *DR* 7–101(A)(1) and (2) and *RPC* 1.1(a) and 1.3.

---

[2]BT denotes the transcript of the Board hearing on April 20, 1988.

Additionally, respondent repeatedly ignored grievant's legitimate requests for information about the status of the matter. An attorney's failure to communicate with his clients diminishes the confidence the public should have in members of the bar. *Matter of Stein*, 97 *N.J.* 550, 563 (1984). Accordingly, the Board finds that respondent's failure to communicate with grievant was unethical and in violation of *DR* 7–101(A) and *RPC* 1.4(a).

Moreover, respondent on numerous occasions ignored the committee's requests for information and cooperation with its investigation of this matter. Several telephone calls and three letters from the committee produced no response.[3] The Board is particularly disturbed by respondent's failure to comply with his promise, made at the committee hearing, to turn over the file to new counsel without delay. Disrespect to an ethics committee constitutes disrespect to the Supreme Court, as such a committee is an arm of the Court. *In re Grinchis*, 75 *N.J.* 495, 496 (1978) (where mishandling of automobile accident claim, resulting in expiration of the statute of limitations, coupled with disrespect toward ethics committee agent warranted severe public reprimand). *But See Matter of Smith*, 101 *N.J.* 568 (where attorney received a three-month suspension for failure to diligently pursue estate matter, to cooperate with ethics committee and to maintain regular office procedure).

The purpose of discipline, however, is not the punishment of the offender, but "protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession". *In re Getchius*, 88 *N.J.* 269, 276 (1982), citing

---

[3]Respondent, however, filed a timely answer to the ethics complaint.

*In re Stout,* 75 *N.J.* 321, 325 (1978). "The severity of the discipline to be imposed must comport with the seriousness of the ethical infraction in light of all the relevant circumstances". *In re Nigohosian,* 88 *N.J.* 308, 315 (1982). Mitigating factors are, therefore, relevant and may be considered. *In re Hughes,* 90 *N.J.* 32, 36 (1982).

In mitigation, the Board considered that respondent candidly admitted his misconduct and expressed remorse for his actions, having apologized to the grievant and the committee members. At the Board hearing, he confessed that his failure to comply with his promise to the ethics committee to turn over the file to new counsel forthwith was not the result of arrogance but, rather, ignorance and fear. He explained that the ethics matter had been an embarrassment to him and something from which he chose to hide, rather than face. This appears to be a single incident which is not likely to repeat itself as, since March 1, 1988, respondent has been in partnership with a more experienced attorney, who appears to be exercising a supervisory role over respondent's activities. Additionally, respondent did not derive any personal gain from the representation and has agreed to be responsible for any legal fees, costs or charges incurred with the final resolution of the matter. The client, thus, has not suffered financial injury.

Respondent's disregard of his ethical responsibilities not only to his client but to his profession, however, cannot be countenanced. This fact, coupled with a private reprimand received by respondent in December 1986, warrants a recommendation by the Board majority that respondent be publicly reprimanded. Three members would impose a three-month suspension.

The Board further recommends respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.