866 A.2d 171

IN THE MATTER OF RICHARD J. ZEITLER,
AN ATTORNEY AT LAW.

Argued November 9, 2004—Decided February 10, 2005.

390

*Brian D. Gillet,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Douglas R. Kleinfeld* argued the cause for respondent (*Kleinfeld & Kleinfeld,* attorneys).

Justice ZAZZALI delivered the opinion of the Court.

In this matter, a Special Master held hearings to address allegations of unethical conduct set forth in three complaints filed by the District VIII Ethics Committee against respondent, Richard J. Zeitler. The Special Master ultimately recommended a three-year suspension. Although a majority of the Disciplinary Review Board (DRB) agreed with the Special Master's recommendation, two members urged respondent's disbarment in a vigorous dissent. Consistent with that dissent, the Office of Attorney Ethics (OAE) now asks this Court to disbar respondent.

Twenty-five years ago, we noted that respondent had made misrepresentations to his clients as to the status of their cases, was "cavalier," and had a "deplorable disciplinary history." *In re Zeitler,* 85 *N.J.* 21, 25, 424 *A.*2d 419 (1980). The passage of time, and the three matters now before us, confirm those findings. Respondent's reprehensible conduct in this appeal, considered alone, would warrant imposition of a suspension. When we review his extensive history of ethics violations, however, we conclude that respondent is unfit to practice law and, therefore, must be disbarred.

I.

Respondent was admitted to the New Jersey bar in 1966. His ethical misdeeds began in 1976 when we suspended him from the

practice of law for one year because of his misconduct involving dishonesty, fraud, deceit, or misrepresentation in two cases. *In re Zeitler,* 69 *N.J.* 61, 350 *A.*2d 479 (1976). In 1980, we again suspended respondent, this time for two years, for his gross neglect of two matters, misrepresentations to his clients, and failure to inform his clients that their cases had been dismissed. *Zeitler, supra,* 85 *N.J.* at 21, 424 *A.*2d 419. In 1995, he received an admonition for lack of diligence in a matter. In 1999, he was reprimanded for the improper release of escrow funds. *In re Zeitler,* 158 *N.J.* 182, 728 *A.*2d 1288 (1999). Finally, in 2000 we issued two orders reprimanding respondent. The first reprimand was for practicing law full-time while on the ineligible list due to nonpayment of the annual attorney assessment to the New Jersey Lawyers' Fund for Client Protection. *In re Zeitler,* 165 *N.J.* 500, 759 *A.*2d 846 (2000). Respondent received the second reprimand for failing to act diligently in handling a matter and failing to communicate adequately with his client. *In re Zeitler,* 165 *N.J.* 503, 759 *A.*2d 847 (2000). As a result of those two reprimands, we concluded that respondent should be required to practice law under the supervision of an OAE-approved proctor for a period of two years. *Ibid.; Zeitler, supra,* 165 *N.J.* at 500, 759 *A.*2d 846. Importantly, some of the misconduct involved in this appeal occurred during the proctorship.

## II.

The DRB's opinion details at length the circumstances that gave rise to the three complaints of ethical misconduct at issue here. In view of the DRB's comprehensive recitation of the facts, we outline them in summary form.

### A.

### *The Morffiz Matter*

In 1998, George Morffiz retained respondent to appeal an unsatisfactory workers' compensation award. The record indi-

cates that, although respondent filed a notice of appeal on Morf-fiz's behalf, he failed to take any further action, resulting in dismissal of the case in January 1999. Respondent then repeatedly failed to answer his client's requests for an update on the progress of the appeal. Finally, in December 2000, Morffiz traveled from his Florida home and paid respondent a surprise visit at his law office. Respondent told Morffiz that he was unable to meet with him, and that he should come back in one week. Morffiz returned the following week, only to be told by respondent that he was awaiting a court date. As noted, the Appellate Division had already dismissed the appeal.

In October 2001, over two years after the matter had been dismissed, respondent filed a motion to reinstate Morffiz's appeal. The Appellate Division denied respondent's motion, reasoning that "[t]here [was] insufficient cause shown for reinstating [the appeal] almost three years later."

## B.

### *The Lavin Matter*

Jose Lavin retained respondent in 1991 and again in 1992 to file workers' compensation claims for two separate workplace accidents. The record reflects that respondent filed both federal and state claims in 1993, but all of those claims were dismissed because respondent essentially abandoned them by allowing several years to lapse. Furthermore, during that long period of inaction, respondent failed to keep Lavin reasonably informed. Consequently, Lavin never received compensation based on any efforts by respondent.

## C.

### *The Cipolla Matter*

In 1994, Leonard Cipolla, then fifteen-years-old, seriously injured his hand while operating a power saw in a high school shop class. Cipolla retained respondent in 1997 to represent him in a

suit against the school district and the saw manufacturer. The DRB and OAE agree that respondent committed his most serious ethics violations in his representation of Cipolla.

Respondent filed a complaint in 1998, but the complaint was dismissed in March 1999 for failure to prosecute. Two months later, he successfully moved to have the matter reinstated. But, in 2001, the complaint was dismissed again because respondent failed to apprise the trial court of when he would be available for the start of trial. Although the matter was eventually restored, respondent sent an uninformed per diem attorney to several trial calls in January 2002. The trial court stated that sending the per diem attorney was "the same as not sending anybody" because that attorney was unable to inform the court when respondent would be ready to try the case. Finally, following respondent's absence at a trial call in mid-February, the court dismissed the complaint with prejudice. The court's order stated that dismissal with prejudice was the appropriate sanction because respondent had failed to appear at twelve trial calls.

Three months later, respondent filed a motion for reconsideration, which was denied. A year later, he filed another motion for reconsideration, which was also denied. Respondent then filed a late notice of appeal, which the Appellate Division dismissed for failure to prosecute. As a result, Cipolla lost his claim. Aggravating matters, respondent failed to communicate with Cipolla and failed to inform him of the true status of his case.

Throughout his flawed representation of Cipolla, respondent continuously misinformed Cipolla, ethics authorities, and courts. The DRB found that, in order to avoid a trial date, he lied to the trial court about needing to take his seriously ill wife to a New York hospital for treatment, and repeated that falsehood to the Appellate Division; that he lied to the trial court about needing an adjournment because he was waiting for transcripts when in fact he had never even ordered the transcripts; that he lied to Cipolla about the status of his case; and that he lied in his verified answer to the ethics complaint about having filed an appeal.

## III.

### A.

In 2003, the Morffiz, Lavin, and Cipolla complaints were consolidated and heard by Special Master Miles S. Winder, III. The Special Master found violations of *RPC* 1.1(a) (gross negligence), *RPC* 1.1(b) (pattern of negligence or neglect), and *RPC* 1.3 (lack of reasonable diligence and promptness) with respect to the Morffiz matter. With respect to the Lavin matter, the Special Master found violations of *RPC* 1.4(a) (failure to communicate with client), and *RPC* 1.4(b) (failure to keep client reasonably informed about status of matter and promptly comply with reasonable requests for information) on the basis that respondent kept his client in the dark about the dismissal of his state and federal claims. Finally, in the Cipolla matter the Special Master found violations of *RPC* 1.1(b), *RPC* 1.3, *RPC* 1.4(a), *RPC* 3.2 (failure to make reasonable efforts to expedite litigation), and *RPC* 3.3 (lack of candor toward tribunal). Although the presenter advocated disbarment, the Special Master recommended that respondent be suspended from the practice of law for a term of three years. The Special Master also imposed the additional requirement that, upon reinstatement, respondent "be prohibited from any civil litigation unless under the direct supervision of a proctor."

### B.

On a de novo review of the record, the DRB accepted the Special Master's recommendation, with a few modifications, in a six to two decision. First, although the DRB agreed that respondent violated *RPC* 1.1(a) and *RPC* 1.3 in the Morffiz matter, the DRB additionally found violations of *RPC* 1.4(a) and (b), reasoning that respondent also failed to communicate with Morffiz and denied Morffiz an opportunity to make informed decisions about his appeal. Second, the DRB agreed with the Special Master that respondent violated *RPC* 1.4(a) and (b) in the Lavin matter. The DRB, however, found that respondent, by allowing Lavin's "claims

to waste away for so many years," also violated *RPC* 1.1(a) and *RPC* 1.3. As to the Cipolla matter, the DRB agreed that respondent violated *RPC* 1.3, *RPC* 1.4(a), and *RPC* 3.3. The DRB also found that respondent's representation of Cipolla entailed violations of: *RPC* 1.1(a), because respondent allowed Cipolla to lose his claim; *RPC* 1.4(b), because respondent withheld information that Cipolla would need to make an informed decision; *RPC* 8.1(a) (false statement of material fact to disciplinary authorities), because respondent falsely informed the district ethics committee that he had filed an appeal; and *RPC* 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), because respondent repeatedly attempted to mislead others. The DRB dismissed the Special Master's finding with respect to *RPC* 3.2, reasoning that the rule was inapplicable because respondent did not purposely stall the Cipolla litigation. Finally, the DRB concluded that "the gross neglect in these [three] matters[, when] combined with similar conduct in respondent's prior ethics matters," reflected a pattern of neglect that amounted to a violation of *RPC* 1.1(b).

Despite its modification of the Special Master's findings, a six-member majority of the DRB concluded that a three-year suspension was the appropriate sanction. The DRB majority noted that similar misconduct by attorneys with poor disciplinary histories has resulted in periods of suspension. The DRB's two public members, appalled by respondent's lengthy disciplinary history and his continued disregard of the rules of professional responsibility, voted for disbarment. The dissent reasoned that disbarment was the only appropriate sanction because "respondent has spent thirty [years] neglecting clients, lying to them about their cases, and concocting phony stories for courts and others about his behavior."

After the DRB issued its decision, the OAE petitioned this Court to review the sanction imposed. The OAE agrees with the dissent, arguing that the only way to protect the public and to prevent future transgressions is to disbar respondent.

Respondent argues that a three-year suspension is more than adequate, and perhaps even more than he deserves. He notes that his most serious ethics violations occurred more than twenty years ago, and that the more recent misconduct did not involve the types of offenses ordinarily associated with disbarment. Relying on *In re LaVigne*, 146 *N.J.* 590, 684 *A.*2d 1362 (1996), respondent states: "It is apparent ... that, outside the misappropriation context, disbarment is typically reserved for criminal conduct or something equally egregious. However, Respondent's conduct here clearly does not rise to that level."

## IV.

We now address respondent's conduct in the three matters before us and the quantum of discipline to be imposed.

## A.

The record supports, by clear and convincing evidence, the DRB's finding of ethical violations in the Morffiz, Lavin, and Cipolla matters. Although respondent disserved his client in each of those cases, it is the Cipolla matter that particularly concerns us. As the dissent stated, it is " 'outrageous that a plaintiff ... los[t] his opportunity to prosecute his case because of' " respondent's deliberate misconduct. (Internal quotation marks omitted). Compounding his dilatory behavior, respondent shamelessly misled authorities in an attempt to excuse his actions. Illustratively, he used his wife's multiple sclerosis as an excuse for his laxness when he falsely advised the trial court that he could not appear because he had to take her to a New York hospital for treatment. That tactic, symptomatic of respondent's career, prompted the dissent to comment that he "lies as easily as we breathe."

We agree with, and affirm, the DRB's findings and conclusions with respect to the three matters before us.

B.

■ The DRB noted in its well-reasoned opinion that cases involving unethical conduct and a disciplinary history have usually resulted in suspensions. *See, e.g., In re Aranguren,* 165 *N.J.* 664, 762 *A.*2d 651 (2000); *In re Waters,* 142 *N.J.* 472, 664 *A.*2d 936 (1995); *In re Herron,* 140 *N.J.* 229, 657 *A.*2d 1216 (1995). Although that view is a reasonable one, this case is distinguishable. Respondent has disserved his clients over the course of almost thirty years, compiling an egregious disciplinary history. When respondent's thirty-year history of client disservice is combined with the violations in the Morffiz, Lavin, and Cipolla matters, we find that respondent has forfeited the right and privilege to practice law.

We pause to recount some of the more grievous lapses in respondent's professional and ethical judgment. In respondent's 1976 disciplinary matter, he falsely led his client to believe that her case was on the trial list and instructed the client to be present at the courthouse, when, in fact, the case was not scheduled for trial. Respondent also lied to federal immigration authorities by telling them that he had commenced an action for divorce for a client and that the client intended to marry a United States citizen. In respondent's 1980 disciplinary matter, he repeatedly misrepresented the status of his clients' cases in order to hide the fact that their cases had been dismissed. Respondent also received an admonition in 1995, a reprimand in 1999, and two more reprimands in 2000. One of the reprimands in 2000 was for practicing law while ineligible due to nonpayment of the annual attorney assessment. While ineligible, respondent practiced law "full-time, without abatement," as the DRB stated, or "with a full head of steam," in the words of the dissent. Finally, as a result of two reprimands in 2000, we ordered respondent to practice under the supervision of a proctor.

Despite having received numerous opportunities to reform himself, respondent has continued to display his disregard, indeed contempt, for our disciplinary rules and our ethics system. The

fact that some of the misconduct now before us occurred while respondent was under the supervision of the proctor causes us great concern. As the dissent stated, "[e]ven the mandate of a proctor did nothing to quell [respondent's] worst urges. Much of his worst misconduct, the lies to Cipolla, to the trial and appellate courts, and to the ethics authorities, took place after the proctor was in place." Because our past efforts to rehabilitate respondent have been ignored, we are persuaded that renewed efforts would be ineffective.

 Disbarment is the only appropriate sanction when this Court is "unable to conclude that [an attorney] will improve his conduct." *In re Cohen,* 120 *N.J.* 304, 308, 576 *A.*2d 855 (1990). As we stated in *In re DiLieto,* when "the totality of the evidence against [an attorney] reveals a pattern of intentional deception and dishonesty that clearly and convincingly demonstrates that his ethical deficiencies are intractable and irremediable ... [d]isbarment is the only appropriate sanction." 142 *N.J.* 492, 507, 665 *A.*2d 1094 (1995) (internal quotation marks and citations omitted). Like the attorney we disbarred in *DiLieto,* respondent's conduct here "has destroyed totally any vestige of confidence that [he] could ever again practice in conformity with the standards of the profession." *Ibid.* (internal quotation marks omitted) (alteration in original).

In another case involving a repeat ethics violator, Lester T. Vincenti, who was the subject of four reported decisions over fifteen years, the Court concluded:

> Nothing in the record inspires confidence that if the respondent were to return to practice that his conduct would improve. Given his lengthy disciplinary history and the absence of any hope for improvement, we expect that his assault on the Rules of Professional Conduct would continue. Our responsibility to the bench, bar, and the public requires that we take final and irrevocable action.

> [*In re Vincenti,* 152 *N.J.* 253, 254–55, 704 *A.*2d 927 (1998).]

More recently, we disbarred an attorney who exhibited a pattern of destructive behavior similar to respondent's. In that case, we pointed out:

> Even if respondent committed negligent, rather than knowing, misappropriation, we would conclude that disbarment is the appropriate penalty.... Respondent's extensive ethics history and his profound lack of professional good character and fitness compels the conclusion that respondent should not be allowed to practice law in New Jersey.
>
> [*In re Frost*, 171 *N.J.* 308, 328, 793 *A.*2d 699 (2002) (internal quotation marks and citations omitted).]

As disbarment was the appropriate sanction in *DiLieto, Vincenti,* and *Frost,* disbarment of respondent is the proper sanction.

## V.

The ultimate goal of attorney discipline is to preserve the confidence that the public has in the trustworthiness of attorneys. Moreover, "[t]he public must be protected from attorneys who, either through incompetence or neglect, mishandle legal matters entrusted to them to the detriment of their clients." *Zeitler, supra,* 85 *N.J.* at 25, 424 *A.*2d 419. To this end, the discipline to be imposed must reflect the gravity of the misconduct in light of all relevant circumstances. *In re Nigohosian,* 88 *N.J.* 308, 315, 442 *A.*2d 1007 (1982). Consideration must be given to the interests of the public, the bar, and the individual involved. *In re Kushner,* 101 *N.J.* 397, 400, 502 *A.*2d 32 (1986). In order to maintain the confidence in the integrity of the bar, respondent, because of his actions in the pending matters, as well as his lengthy disciplinary history, merits substantially more discipline than that recommended by the six-member majority of the DRB.

The DRB dissent concluded that respondent "is an incorrigible and dangerous attorney and a menace to the public." Although hyperbole, the observation is not wide of the mark. In view of the many opportunities that respondent had to redeem himself, and considering his abject failure to do so, we conclude that the respondent does not deserve, and the public cannot risk, another chance.

Respondent is disbarred.

*For Disbarment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—7.

*Opposed*—None.

**ORDER**

It is ORDERED that **RICHARD J. ZEITLER** of **ISELIN**, who was admitted to the bar of this State in 1966, be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that all funds, if any, currently existing in any New Jersey financial institution maintained by **RICHARD J. ZEIT-LER** pursuant to *Rule* 1:21–6 be restrained from disbursement except on application to this Court, for good cause shown, and shall be transferred by the financial institution to the Clerk of the Superior Court, who is directed to deposit the funds in the Superior Court Trust Fund pending the further Order of this Court; and it is further

ORDERED that **RICHARD J. ZEITLER** comply with *Rule* 1:20–20 dealing with disbarred attorneys; and it is further

ORDERED that **RICHARD J. ZEITLER** be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that **RICHARD J. ZEITLER** reimburse the Disciplinary Oversight Committee for appropriate administrative costs.