877 A.2d 1179

IN THE MATTER OF PHILIP M. MORELL,
AN ATTORNEY AT LAW.

Argued May 23, 2005—Decided July 19, 2005.

*Lee A. Gronikowski,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

Respondent did not appear.

PER CURIAM.

I.

Respondent Philip M. Morell was admitted to practice law in New Jersey in 1988, and in New York in 1989. Respondent has twice before been the subject of ethical discipline. In May 1999, as part of an agreement in lieu of discipline, respondent admitted a violation of *New Jersey Rule of Professional Conduct (RPC )* 3.2 (failure to expedite litigation) and *RPC* 3.4 (fairness to opposing party and counsel) for failure to diligently prosecute a claim and to comply with his adversary's discovery request. Respondent attended and completed a diversion program in November 1999.

On November 20, 2001, the Grievance Committee for the Ninth Judicial District filed a petition against respondent in New York. The nine-count petition charged respondent with a series of viola-

tions of *New York Disciplinary Rule* 1–102(a)(4).[1] The case was referred to a Special Referee, who issued a report concluding that the factual allegations in the nine-count complaint had been established by respondent's admission or by other evidence presented. In imposing a one-year suspension on respondent, effective July 9, 2003, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, noted a number of mitigating factors, including that respondent assumed responsibility for making one of the victims whole and submitted an affidavit stating he had "corrected the problems associated with his misconduct by the addition of two partners and the use of new office techniques." Upon respondent's application, the effective date of his New York suspension was changed to August 8, 2003.

The Office of Attorney Ethics filed a motion for reciprocal discipline in New Jersey. We granted that motion and suspended respondent for one year, effective August 8, 2003, for his repeated misrepresentations to two clients. *In re Morell*, 180 *N.J.* 153, 849 *A.2d* 563 (2004).

On June 11, 1997, respondent was retained by grievant Marc Fink to file a medical malpractice action for damages arising out of surgeries to repair herniated discs in his lower back. Respondent failed to file suit. For approximately four years thereafter, respondent misrepresented to Fink the status of his case. In particular, respondent told Fink that he filed suit, obtained a neurosurgeon and a psychiatrist as expert witnesses, discussed settlement with representatives of an insurance carrier of one of the defendants, rejected an offer of $250,000 to settle the case, and received another offer of $700,000. In March 2001, respondent told Fink he received a settlement offer of $1.1 million. Fink accepted it. Unfortunately, this was all a subterfuge because there was no such settlement. Respondent continued the charade

---

[1] *New York Disciplinary Rule* 1–102(a)(4) corresponds to New Jersey *RPC* 8.4(c), which states: "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

by having Fink sign a release for the $1.1 million non-existent settlement. Respondent told Fink that he could now "purchase the car of his dreams." Relying on that information, Fink borrowed funds from his father and purchased an expensive automobile. Respondent also told the attorney representing Fink in a workers' compensation matter that he had settled the malpractice action for $1.1 million.

In early July 2001, respondent informed Fink that he had received the settlement funds and would wire the funds to Fink immediately. Respondent then claimed that due to a bank problem, the funds would be wired to Fink on July 4, 2001, a bank holiday. Several days later, respondent admitted to Fink's father that he had fabricated the settlement and that no complaint had been filed.

After Fink filed a grievance against respondent, on July 22, 2003, the District IIA Ethics Committee mailed a copy of the complaint by certified and regular mail to respondent's last known address in Tenafly, New Jersey. Respondent submitted an unverified answer dated August 22, 2003, accepting responsibility and asking to be heard on the penalty. Because the answer was not verified, it was returned to respondent with a request for a verified answer. Despite that request, respondent failed to comply. The failure to answer was deemed an admission to the allegations in the complaint. *R.* 1:20–4(f)(1). The matter was then certified to the Disciplinary Review Board (Board). *R.* 1:20–4(f)(2).

For his conduct with Fink, respondent was charged with violating *RPC* 1.1(a) (gross negligence), *RPC* 1.3 (lack of diligence), *RPC* 1.4(a) (failure to communicate with client), and *RPC* 4.1(a)(1) (false statement of material fact to third person). On September 6, 2004, the Board published a notice in the *New Jersey Law Journal* and the *New Jersey Lawyer,* advising respondent of the scheduled review of the matter on September 23, 2004, and of the deadline for filing a motion to vacate the default. Again, respondent failed to respond.

On October 26, 2004, the Board found that respondent was guilty of violating *RPC* 1.1(a), *RPC* 1.3, *RPC* 1.4(a), and *RPC* 4.1(a)(1). In addition, the Board found that although respondent was not charged with a violation of *RPC* 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), "the complaint contained sufficient facts to establish violations of that rule." The Board recommended the imposition of a two-year suspension to run consecutive to the one-year suspension respondent was serving. Further, prior to reinstatement, respondent had to submit proof of fitness to practice law, as attested by a mental health professional approved by the Office of Attorney Ethics.

In November 2004, a review of the record in this matter revealed that notice of the Board's decision was sent to respondent at his office address in Tenafly at a time when he was under suspension. Moreover, the certified mail of the Board's decision was returned with a notation "moved, left no address." A staff attorney of the Supreme Court Clerk's Office telephoned respondent and informed him of the Board's decision. On December 10, 2004, the staff attorney sent a letter to respondent with a copy of the record, informing him that he "may file a petition for review pursuant to *R* [*ule* ] 1:20–16(b) urging the imposition of lesser discipline and/or even vacation of default and remand for a plenary hearing...." Tellingly, the letter instructed respondent to consider the case *In re Kantor*, 180 *N.J.* 226, 850 *A.*2d 473 (2004), in deciding whether to file a response to the Board's decision. Respondent did nothing in response to this notice.

On April 7, 2005, we ordered respondent to show cause why he should not be disbarred or otherwise disciplined, and to file a response by April 29, 2005. Again, respondent did nothing by way of a response.

## II.

Our independent review of the record satisfies us by clear and convincing evidence that respondent has engaged in unethical conduct. The elaborate scheme of deception, beginning with re-

spondent's false statement to the grievant that a complaint had been filed on his behalf through the misrepresentation that the case had been settled, conclusively establishes respondent's professional misconduct.

 We set forth the principles applicable to the measure of discipline in *In re Infinito*, 94 *N.J.* 50, 462 *A.*2d 160 (1983). In that case, we stated:

> Our goal in these hearings is to protect the interests of the public and the bar while giving due consideration to the interests of the individual involved. Similar to a sentencing judge in a criminal matter, we take into consideration many factors in determining the proper discipline to be imposed. We consider the nature and severity of the [unethical conduct], and whether [it] is related to the practice of law. We consider evidence which does not dispute the [unethical conduct] but which shows mitigating circumstances [relevant to] the issue of whether the nature of the conviction merits discipline and, if so, the extent thereof. Similarly, we consider evidence of an attorney's good reputation, his prior trustworthy professional conduct, and his general good character.
>
> [*Id.* at 57, 462 *A.*2d 160 (internal citations and quotations omitted).]

In addition, we consider whether the respondent appeared and participated in the disciplinary proceeding. *Kantor, supra,* 180 *N.J.* at 233, 850 *A.*2d 473 (concluding "[a]n attorney who declines to appear before this Court to explain his unprofessional conduct and who offers no evidence in mitigation of punishment for disciplinary infractions as serious as those in this case openly displays his unfitness to continue to practice law").

 In the present case, the Board believed that a two-year suspension, not disbarment, was the appropriate sanction. We disagree. "[A]ttorney misconduct that undermines the integrity of the administration of justice" may warrant disbarment. *In re Kornreich,* 149 *N.J.* 346, 365, 693 *A.*2d 877 (1997) (citations omitted). Moreover, inasmuch as respondent failed to cooperate, failed to respond to the request for a verified answer, and failed to offer evidence in mitigation, disbarment is the appropriate sanction.

Respondent's conduct is similar to that presented in *Kornreich.* In that case, the respondent was charged with motor-vehicular offenses arising from a car accident. *Id.* at 348, 693 *A.*2d 877. As

a result of the respondent's false statement that her full-time babysitter was the driver of the car at the time of the accident, the charges were dismissed against her and filed against the babysitter. When the respondent's scheme was uncovered, the charges were dismissed against the babysitter. *Ibid.* Criminal charges were then filed against the respondent and were later dismissed after she completed a pretrial intervention program. *Id.* at 349, 693 *A.*2d 877. The respondent also was charged with multiple ethics violations involving her dishonesty and misrepresentation. The Board found her guilty and recommended a one-year suspension. *Ibid.* We disagreed with that sanction and, despite our recognition that disbarment would generally be appropriate in such circumstances, we concluded that the respondent's mitigating evidence of her youth and inexperience justified our withholding the ultimate sanction of disbarment. *Id.* at 370–71, 693 *A.*2d 877. Instead, we imposed a suspension for a period of three years. *Id.* at 372, 693 *A.*2d 877.

In *In re Edson,* 108 *N.J.* 464, 465, 530 *A.*2d 1246 (1987), the respondent was charged with engaging in conduct involving dishonesty and fraud. Those charges arose from the respondent's fabrication of an extrapolation defense in a prosecution for violation of the driving while intoxicated statute. *Ibid.* The majority of the Board recommended that the respondent be suspended for three years, while a four-member minority recommended disbarment. *Id.* at 471, 530 *A.*2d 1246. We agreed with the minority and disbarred the respondent, noting that "[t]here could hardly be a plainer case of dishonesty touching the administration of justice and arising out of the practice of law." *Id.* at 473, 530 *A.*2d 1246.

The present case is a clear case of dishonesty, fraud, and deceit. The undisputed evidence demonstrates that respondent continually fabricated a story to his client to make it appear that the client's interests were protected and that the client would receive a substantial recovery. Respondent's conduct displayed a total disregard for an attorney's responsibility to "serve [his] clients

and the administration of justice honorably and responsibly." *In re Matthews*, 94 *N.J.* 59, 77, 462 *A*.2d 165 (1983).

This is not a case of a new attorney who somehow lost sight of his or her ethical responsibilities. Nor is this respondent's first brush with the disciplinary system. Just as important, unlike *Kornreich*, where the respondent presented evidence in mitigation, respondent "presented no evidence in mitigation of his dereliction or in support of his fitness to practice law." *Kantor, supra*, 180 *N.J.* at 232, 850 *A*.2d 473. In fact, respondent presented no defense at all. Under these circumstances, respondent's conduct, involving dishonesty, fraud, and deceit, reflects his unfitness to practice law.

We order the disbarment of respondent.

Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE, and RIVERA–SOTO join in this opinion.

## ORDER

It is ORDERED that **PHILIP M. MORELL** of **NEW RO-CHELLE, NEW YORK,** who was admitted to the bar of this State in 1988, be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that all funds, if any, currently existing in any New Jersey financial institution maintained by **PHILIP M. MORELL** pursuant to *Rule* 1:21–6 be restrained from disbursement except on application to this Court, for good cause shown, and shall be transferred by the financial institution to the Clerk of the Superior Court, who is directed to deposit the funds in the Superior Court Trust Fund pending the further Order of this Court; and it is further

ORDERED that **PHILIP M. MORELL** comply with *Rule* 1:20–20 dealing with disbarred attorneys; and it is further

ORDERED that **PHILIP M. MORELL** be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that **PHILIP M. MORELL** reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

*For Disbarment*—Chief Justice PORITZ, Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—7.

*Opposed*—None.