939 A.2d 216

IN THE MATTER OF RUSSELL T. KIVLER,
AN ATTORNEY AT LAW.

Argued November 27, 2007—Decided January 18, 2008.

*Janice L. Richter*, Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Russell T. Kivler* did not appear.

Justice HOENS delivered the opinion of the Court.

This disciplinary matter presents this Court with an unfortunately recurring theme in which a respondent, already facing enhanced discipline based on both a history of earlier disciplinary infractions and a failure to cooperate with the investigating disciplinary authorities, compounds the severity of the matter by ignoring the Order of this Court that he appear and show cause in connection with the penalty to be imposed. Because we consider an attorney's refusal or failure without excuse to appear in compliance with our Order to be unacceptable behavior by a member of the bar, we conclude that it is appropriate for us to further enhance the disciplinary sanction that we would otherwise impose based on this separate and independent ground.

## I.

Respondent Russell T. Kivler was admitted to the practice of law in the State of New Jersey in 1973. His disciplinary history began in 2005, when he was reprimanded. *In re Kivler*, 183 *N.J.* 220, 871 *A.*2d 661 (2005). That order arose out of respondent's representation of two clients, a married couple, who retained him in connection with three separate matters. The record of that proceeding reflects that in one of the matters, he filed an answer and counterclaim but did little else for seven years, and in the other two matters, he failed to take any action at all. In that disciplinary matter, respondent cooperated with the investigating authorities. He did not contest the finding that he had failed to protect his clients' interests, instead explaining that he had relied on junior associates to whom he had assigned those files. In addition, he argued for mitigation of the penalty by demonstrating that he had sought treatment with a psychologist for stress arising from his busy practice.

This Court concluded that respondent should be reprimanded for violating *RPC* 1.1(a) (gross neglect), *RPC* 1.1(b) (pattern of neglect), *RPC* 1.3 (lack of diligence), *RPC* 1.4(a) (failure to communicate with client), *RPC* 1.4(b) (failure to explain matter to extent necessary for client to make informed decision), *RPC* 3.2 (failure to expedite litigation), and *RPC* 5.1(b) (failure to supervise junior attorney). The Order imposing that discipline on respondent also required him to submit proof of his fitness to practice law, "as attested to by a mental health professional," *Kivler, supra,* 183 *N.J.* at 220, 871 *A.*2d 661, within ninety days of the date of that order and further ordered respondent to complete an approved course in law office management and submit proof of his successful completion of that course to the Office of Attorney Ethics (OAE). *Ibid.*

Prior to the time when this Court issued that first reprimand, another client of respondent's had filed a grievance against him. In January 2005, that client asserted that he had retained respondent to represent him in a divorce action, had paid him a retainer,

but had discharged respondent five days later and requested the return of the retainer, which respondent had failed to refund in spite of having promised to do so. Unlike his cooperative response to the first disciplinary matter, respondent failed to provide a timely response to that client's grievance. Not until June 2005, four months after the time allotted for him to do so, did he file a reply. At that time, he contended that only part of the retainer was unearned and asserted that he had advised his client of his right to engage in a fee arbitration proceeding, see R. 1:20A.

In January 2006, respondent was served with a formal ethics complaint, which included a count based on his failure to cooperate with the investigation by the District Ethics Committee (DEC). Thereafter, respondent returned the full amount of the retainer, but he did not respond to the ethics complaint, and he did not respond to written notice from the DEC advising him that his failure to answer would result in a default.

The DEC certified the matter to the Disciplinary Review Board (DRB) as a default, see R. 1:20–4(f)(2), after which respondent filed a motion to vacate. He disputed the client's assertion that he had been discharged within days of the original retainer agreement; he argued that he had performed services for the client that gave him a legitimate basis for his dispute about the amount of the refund to which the client was entitled; and he asserted that once he returned the full amount of the retainer, he had satisfied the client and ended the matter. Concluding that respondent had given no reason for his failure to respond to the ethics complaint, the DRB denied the motion to vacate and proceeded to decide the matter as a default.

In addressing the appropriate quantum of discipline, the DRB first noted that a failure to return an unearned retainer or a failure to cooperate with the DEC would ordinarily result in an admonition, but that respondent's default supported the imposition of an enhanced penalty of a reprimand. By our Order dated December 5, 2006, we agreed with that recommendation, imposing a second reprimand upon respondent. *In re Kivler,* 188 *N.J.* 586,

911 *A*.2d 479 (2006). By the time that we did so, however, respondent had already been temporarily suspended for his failure to submit the required proof of fitness ordered by this Court in 2005, *In re Kivler,* 188 *N.J.* 342, 907 *A*.2d 1004 (2006), and reinstated as of November 2, 2006, following his compliance with that earlier directive. *In re Kivler,* 188 *N.J.* 477, 909 *A*.2d 284 (2006).

During the same approximate time frame, another client filed a grievance against respondent, alleging that she had retained him to represent her in a divorce proceeding, had paid him a retainer, and that he had failed to perform any services for her notwithstanding her several efforts to contact him through his office staff. Prior to filing a formal complaint, the DEC sent respondent a copy of the grievance and repeatedly requested that he respond, all without success.

A formal ethics complaint, charging respondent with having violated *RPC* 1.5 (unreasonable fee), *RPC* 8.1(b) (failure to cooperate with disciplinary authorities), *RPC* 1.1(a) (gross neglect), *RPC* 1.1(b) (pattern of neglect), *RPC* 1.3 (lack of diligence), and *RPC* 1.4(a) (failure to communicate with the client), was served on respondent in January 2006. When he failed to respond, the DEC directed him in writing to file an answer and alerted him that his failure to do so would result in a sanction. Because respondent still did not respond, the matter was forwarded to the DRB as a default.

Deeming all of the allegations to be admitted, the DRB found that respondent had taken the client's retainer and had failed to perform any services for her, constituting gross neglect, *see RPC* 1.1(a), and a lack of diligence, *see RPC* 1.3. At the same time, he had failed to respond to her many efforts to contact him, *see RPC* 1.4(a), and had failed to return the unearned retainer to her, *see RPC* 1.16(d), in spite of her requests that he do so. However, the DRB concluded that respondent could not be found to have engaged in a pattern of neglect, *RPC* 1.1(b), because the matter involved only one client.

In addressing the appropriate quantum of discipline, the DRB considered the specific infractions and the nature and extent of respondent's disciplinary history. In addition, the DRB noted that a respondent's failure to cooperate with disciplinary authorities, *RPC* 8.1(b), is an aggravating factor that supports the imposition of enhanced discipline. *See In re Nemshick,* 180 *N.J.* 304, 850 *A.*2d 1250 (2004) (concluding that conduct of an attorney with no ethics history meriting reprimand would be enhanced to three-month suspension due to default). In light of all of these considerations, the DRB recommended the imposition of a three-month period of suspension together with a direction to respondent that the retainer be returned. We agreed with the analysis and recommendation, and on January 11, 2007, we ordered that respondent be suspended for three months, that he refund the retainer to that client, and that he comply with *R.* 1:20–20, relating to suspended attorneys. *In re Kivler,* 189 *N.J.* 192, 914 *A.*2d 829 (2007). It is against this backdrop that we evaluate the most recent matter concerning respondent.

## II.

The matter that we now consider arises from the complaint of an elderly client who was injured in a slip and fall incident in November 2001 and who retained respondent to represent her early in 2002. The record reflects that, within days of being retained, respondent forwarded to his client a copy of a letter he had sent to the business where she suffered her injury demanding that the business notify its insurer of the claim. During the following four years, however, respondent neither filed a complaint on his client's behalf nor did anything else to protect or prosecute her claim.

In March 2006, the client came from Georgia to New Jersey to meet with respondent about her claim. During that meeting, respondent told the client that he could not give her a copy of the complaint or the docket number because he was unable to locate her file, a shortcoming he blamed on his secretary. In response,

the client asked him why personnel at the court house had no record of her matter. In reply, respondent told her that he would send her "papers of what he has been doing." He assured her that the matter was proceeding in the ordinary course, in spite of the fact that he had never filed a complaint and, by the time of that meeting, the applicable statute of limitations had already expired. Approximately ten days after that meeting, when respondent did not return her calls for information, the client contacted the DEC and she filed her grievance shortly thereafter.

Respondent did not respond when served by the DEC with his client's grievance as required, *R.* 1:20–3(g)(3), and he did not respond to two further letters from the DEC requesting that he do so. In December 2006, a formal ethics complaint was filed, charging respondent with violations of *RPC* 1.1(a) (gross neglect), *RPC* 1.1(b) (pattern of neglect), *RPC* 1.4(b) (failure to communicate with the client), *RPC* 3.2 (failure to expedite litigation), *RPC* 8.1(b) (failure to cooperate with ethics authorities in the investigation of the grievance), and *RPC* 8.4(c) (misrepresentation). Although he was served by both certified and regular mail, *R.* 1:20–4(d), *R.* 1:20–7(h), respondent did not file an answer to the complaint as required. *See In re Gavel,* 22 *N.J.* 248, 263, 125 *A.*2d 696 (1956) (concluding that due to the nature of the allegations, an answer should contain a "full, candid and complete disclosure of all facts reasonably within the scope of the transactions set forth in the charges against him"); *R.* 1:20–4(e). The matter was therefore certified to the DRB as a default. *See R.* 1:20–4(f); *R.* 1:20–6(c)(1).

The DRB concluded that respondent's conduct in this client's matter amounted to gross neglect and that, when combined with the conduct that gave rise to respondent's prior disciplinary matters, the respondent had engaged in a pattern of neglect. Although concluding that respondent's initial letter to the putative defendant sufficed as a defense to *RPC* 3.2, the DRB determined that respondent had failed to keep his client advised about her matter, failed to return her telephone calls, and misrepresented

the status of her matter. Finally, the DRB concluded that respondent's failure to cooperate with the DEC investigation and failure to file an answer merited enhanced discipline. The DRB, by a vote of eight of its members, recommended that a suspension of one year be imposed. One member of the DRB voted for respondent's disbarment.

In September 2007, when this matter came before the Court, we issued an Order directing respondent to appear on November 27, 2007, and show cause "why he should not be disbarred or otherwise disciplined," setting forth a briefing schedule, and directing that his January 2007 temporary suspension, from which he had never been relieved, remain in effect pending our further order. At the same time, because the record did not reflect whether respondent had complied with the January 2007 Order's direction that he return a retainer to the client in that earlier matter, we directed that the OAE make inquiry of him. OAE counsel complied on September 12, 2007, writing to respondent and inquiring about the status of that repayment directive. Nearly two months later, respondent had not responded to that inquiry and had not filed a brief in accordance with the schedule set forth in our Order to Show Cause. On November 27, 2007, the return date for the Order to Show Cause, respondent neither appeared nor otherwise communicated with the Court by way of explanation as to any of the matters before us.

## III.

■ The record before us leaves no doubt about respondent's several ethical violations. Indeed, the record, when seen in light of respondent's prior disciplinary history, demonstrates a pattern of neglect of his clients. In this, his fourth disciplinary matter, he not only failed to file a personal injury complaint for his elderly client, see In re Youmans, 118 N.J. 622, 635–36, 573 A.2d 899 (1990) (concluding that delay in filing complaint constituted gross neglect), thus allowing the period of limitations to elapse, see In re Cohen, 120 N.J. 304, 306, 576 A.2d 855 (1990) (finding failure to

file complaint and allowing statute of limitations to expire constituted lack of diligence), but he affirmatively misrepresented to her that he had done so when she traveled here from her home in Georgia, blaming his secretary for his inability to provide her with a copy of the complaint or the docket number. When the client asked him why the court system had no record of her complaint, he assured her that he would send her copies of all of the papers to show her what he had done on her behalf. After she had returned to her home in Georgia, respondent failed to respond to any of her further efforts to contact him. *See In re Rosenblatt*, 60 *N.J.* 505, 507, 291 *A.*2d 369 (1972) (concluding that ignoring client's repeated telephone calls and letters constituted failure to communicate).

■ Without any doubt, these facts support the findings of the DRB that respondent has engaged in gross neglect, *RPC* 1.1(a), *see Youmans, supra,* 118 *N.J.* at 635–36, 573 *A.*2d 899; has failed to communicate with his client and failed to keep his client adequately informed, *RPC* 1.4(b), *see Rosenblatt, supra,* 60 *N.J.* at 507, 291 *A.*2d 369; and has engaged in deceit and misrepresentation, *RPC* 8.4(c), *see In re Frost*, 171 *N.J.* 308, 321–22, 793 *A.*2d 699 (2002). Moreover, when viewed in light of the facts that supported his two prior disciplinary matters, it is plain that respondent has engaged in a pattern of neglect, *RPC* 1.1(b), *see In re Zeitler*, 182 *N.J.* 389, 396, 866 *A.*2d 171 (2005) (concluding that three infractions constituted a pattern). Those facts alone would support imposition of a disciplinary sanction more severe than would be warranted were this respondent's first infraction. Further compounding the seriousness of these violations, however, is the fact that respondent failed to cooperate with the DEC, *see R.* 1:20–3, and failed to respond to the complaint or to its repeated efforts to secure an answer from him.

In the past, we have concluded that an attorney who has engaged in behavior generally similar to that of respondent, but has no prior disciplinary history and has responded to the complaints of the disciplinary authorities, should be reprimanded.

*See, e.g., In re Tunney,* 176 *N.J.* 272, 822 *A.*2d 604 (2003); *In re Porwich,* 159 *N.J.* 511, 732 *A.*2d 508 (1999). However, we have recognized that a prior disciplinary record will generally call for an increase in the penalty that would ordinarily be appropriate for the same behavior. *See In re Page,* 165 *N.J.* 512, 759 *A.*2d 1221 (2000); *In re Pena,* 164 *N.J.* 222, 233, 753 *A.*2d 633 (2000) (finding that substantial sanctions were warranted because offending attorneys were recidivists). We have also previously concluded that a respondent's default or failure to cooperate with the investigative authorities operates as an aggravating factor, which is sufficient to permit a penalty that would otherwise be appropriate to be further enhanced. *See In re Yetman,* 113 *N.J.* 556, 563, 552 *A.*2d 121 (1989) (failing to cooperate with and respond to ethics committee on disciplinary matters may result in enhanced sanctions).

Most recently, we have held that failure to cooperate with the ethics authorities, and failure to respond when summoned to appear before this Court are considerations that may, when coupled with serious infractions, even call for disbarment. *In re Kantor,* 180 *N.J.* 226, 233, 850 *A.*2d 473 (2004); *see In re Morell,* 184 *N.J.* 299, 304, 877 *A.*2d 1179 (2005) (applying *Kantor;* failure to appear and participate in disciplinary proceeding operated as an aggravating factor, elevating sanction from two-year suspension to disbarment). It is in this context that we consider the appropriate sanction to be imposed on this respondent.

All of the complaints concerning respondent appear to have arisen in approximately the same time frame, overlapping each other and coming before us in rapid succession. We do not, therefore, encounter a record of longstanding ethical lapses nor a record on which one can fairly conclude that respondent has refused to alter his behavior for the better in light of the earlier imposition of discipline. In those circumstances, one might easily conclude that the *Kantor* doctrine would call for disbarment both because of the risk to the public of continued unrepentant behavior and because of the clear demonstration of unfitness that such a

record would bespeak. *See* 180 *N.J.* at 232–33, 850 *A*.2d 473. Respondent's record does not include evidence of such severity.

We are, however, confronted with a respondent who has not only failed to react to inquiries from the disciplinary authorities, but has done likewise in response to this Court. More specifically, respondent has in the past refused to comply with a restitution Order of this Court, has declined to respond to a request from OAE on our behalf about compliance with our January 2007 Order directing repayment of a retainer and, most troubling, has failed to comply with our Order To Show Cause in this matter. In that, we discern the behavior of one who has demonstrated a significant lack of regard for the disciplinary process in general and for this Court in particular. That failure, in our view, calls for a significant increase in the sanction that, under other circumstances, would be appropriate for similar ethical lapses.

Nonetheless, when compared to the facts we addressed in *Kantor*, respondent's current and prior ethical infractions, and his failure to cooperate with the disciplinary authorities, even when seen in the light of his failure to appear in response to this Court's Order to Show Cause, do not merit disbarment. Rather, we conclude that the DRB's recommended penalty of a one-year suspension, which would have been appropriate based on the record the DRB considered, is inadequate in light of respondent's separate failings before this Court. Accordingly, we conclude that a three-year period of suspension, with respondent's reinstatement to be conditioned on compliance with our January 2007 retainer reimbursement Order as well as respondent's demonstration of his fitness to return to the practice of law, is appropriate.

An Order to Show Cause issued by this Court is neither a suggestion nor an invitation that an attorney is privileged to accept or reject as he or she wishes. Rather, it is an Order to appear with which a respondent's compliance is required. Absent some significant and compelling excuse for a failure to appear in response to our Order, we will consider such a failure to be a serious matter to be evaluated as a part of the record on which an

344

appropriate penalty will be imposed; and we may, on that basis alone, as we have here, further enhance the resulting penalty accordingly.

## IV.

We affirm, as modified, the decision of the DRB, and we issue an Order suspending respondent from the practice of law for a period of three years. His reinstatement shall be conditioned on compliance with our January 2007 retainer reimbursement Order as well as respondent's demonstration of his fitness to return to the practice of law.

## ORDER

It is ORDERED that **RUSSELL T. KIVLER** formerly of **MERCERVILLE**, who was admitted to the bar of this State in 1973, is suspended from the practice of law for a period of three years, effective immediately; and it is further

ORDERED that respondent shall not be reinstated to the practice of law unless and until he complies with the Court's Order on January 11, 2007, ordering him to return the retainer in the *Ribeca* matter; and it is further

ORDERED that prior to reinstatement to practice law, respondent shall submit proof of his fitness to practice law by a mental health professional approved by the Office of Attorney Ethics; and it is further

ORDERED that respondent continue to comply with *Rule* 1:20–20 dealing with suspended attorneys; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

*For Affirmance as Modified*—Chief Justice RABNER, Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*Opposed*—None.